**SAARSTAHL AG, Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Inland Steel Bar Co., Defendant–Intervenor.**

**Slip Op. 96–190.
Court No. 93–04–00219.**

United States Court of International Trade.

Dec. 2, 1996.

---

with instructions to allocate the benefit of nonrecurring subsidies based upon the actual average useful life of Saarstahl's physical assets. Both defendant and defendant-intervenor oppose amendment of the complaint at this late juncture. In addition, Saarstahl has moved for oral argument or alternatively for supplemental briefing with regard to the issues remaining undecided after this Court's final judgment in *Saarstahl AG v. United States,* 939 F.Supp. 898 (CIT1996). Also before the Court is defendant's Motion to Strike Paragraph 3 of Plaintiff's Comments on Remand. Defendant asserts Saarstahl's failure to raise the allocation issue during the administrative proceeding forecloses its raising the issue at this time. Defendant-intervenor supports this motion while Saarstahl opposes it. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1581(c) (1988).

deKieffer & Horgan (J. Kevin Horgan, Marc E. Montalbine), Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (A. David Lafer, Jeffrey M. Telep); Jeffery C. Lowe, Attorney–Advisor, Office of Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC, for defendant.

Wiley, Rein & Fielding (Charles O. Verrill, Washington, DC, Will Martin, Winston–Salem, NC), for defendant-intervenor.

#### OPINION

CARMAN, Chief Judge:

Before the Court is plaintiff's Motion for Leave to Amend its Complaint to include a Count VII challenging the Department of Commerce's ("Commerce" or "Department") use of the 15–year useful life found in the Internal Revenue Service (IRS) tax tables to allocate the benefit of nonrecurring subsidies, rather than the actual average useful life of Saarstahl's physical assets. Saarstahl requests the Court remand the issue to the International Trade Administration (ITA)

## BACKGROUND

In *Saarstahl AG v. United States,* 78 F.3d 1539 (Fed.Cir.1996), the United States Court of Appeals for the Federal Circuit ("Federal Circuit" or "CAFC") reversed and remanded this Court's decision in *Saarstahl, AG v. United States,* 858 F.Supp. 187 (CIT1994). This Court subsequently remanded the action to Commerce in *Inland Steel Bar Co. v. United States,* 936 F.Supp. 1052 (CIT1996).

On September 3, 1996, this Court found those aspects of the *Saarstahl Remand* pertaining to the issue of privatization were supported by substantial evidence on the record and otherwise in accordance with law and entered final judgment with respect to the privatization issue pursuant to U.S. CIT R. 54(b). *See Saarstahl AG v. United States,* 939 F.Supp. 898 (CIT1996). In 939 F.Supp. 898, the Court also denied Saarstahl's motion for oral argument, but indicated the non-privatization issues would be decided in a future, separate opinion and oral argument might be appropriate to assist the Court in resolving those non-privatization issues. *Saarstahl AG v. United States,* 939 F.Supp. at 901 n. 3 (CIT1996). Saarstahl subsequently filed a notice of appeal of Slip Op. 96–154 on October 22, 1996. *Saarstahl AG v. United States,* 939 F.Supp. 898 (CIT1996), *appeal*

*docketed,* No. 97–1122 (Fed.Cir. November 25, 1996). The United States also filed a notice of appeal on November 4, 1996. *Saarstahl AG v. United States,* 939 F.Supp. 898 (CIT1996), *appeal docketed,* No. —— (Fed. Cir. ——, 1996).[1]

## CONTENTIONS OF THE PARTIES

### A. Plaintiff's Motion for Leave to Amend Its Complaint

Saarstahl argues the motion to amend its complaint should be granted because use of the new allocation methodology is required by the Court's recent decisions in *British Steel plc v. United States,* 929 F.Supp. 426 (CIT1996) (*British Steel III*) and *British Steel plc v. United States,* 879 F.Supp. 1254 (CIT 1995) (*British Steel I*). In the *British Steel* opinions, this Court struck down Commerce's use of the 15-year average useful life from the IRS tax tables to allocate the benefit of nonrecurring subsidies, *see British Steel I,* 879 F.Supp. at 1298 (concluding "Commerce's use of a 15-year allocation period based solely on the IRS tax tables is 'unsupported by substantial evidence on the record [and is] otherwise not in accordance with law' ") (citation omitted) (bracketed text in original), and affirmed a methodology which allocated nonrecurring subsidies based upon actual average useful life (AUL) of the physical assets for each respondent. *See British Steel III,* 929 F.Supp. at 439. Saarstahl maintains under the allocation methodology dictated by this Court in the *British Steel* opinions, Commerce must calculate company-specific AULs by using the asset values and depreciation information listed in the company's financial statements. By dividing the gross book value of physical assets by the related annual depreciation expense, Commerce determines a "reasonable estimate of average useful life." *See British Steel III,* 929 F.Supp. at 434 (citation omitted).

Defendant and defendant-intervenor oppose Saarstahl's motion, arguing it is too late in the proceeding for Saarstahl to amend its complaint to raise the allocation issue. De-fendant and defendant-intervenor claim Saarstahl did not raise the allocation issue at the administrative level. Additionally, they argue Saarstahl could have challenged the 15-year allocation methodology at any point from the beginning of the original investigation in mid–1992 to the issuance of this Court's first Saarstahl decision in mid–1994 and "[i]ts delay in doing so disqualifies [the complaint's] amendment now." (Def.Interv.'s Opp'n to Pl.'s Mot. to Amend Compl. at 2.)

### B. Defendant's Motion to Strike Paragraph 3 of Plaintiff's Comments on Remand

In paragraph 3 of its Comments on Remand, Saarstahl challenges Commerce's use of the 15-year average useful life found in the IRS tax tables rather than the actual average useful life of Saarstahl's physical assets and requests the Court remand the matter to Commerce with instructions to allocate the countervailable benefits received by Saarstahl based upon the actual 9-year average useful life of Saarstahl's physical assets. Defendant objects to this comment, asserting the issue "is not the subject of the remand ordered by the Court," and plaintiff has failed to raise the allocation issue "either in its complaint, or in any of its papers during the long course of these proceedings." (Def.'s Mot. to Strike Par. 3 of Pl.'s Comm. on Remand at 1.)

### C. Plaintiff's Motion for Supplemental Briefing

Saarstahl requests this Court direct oral argument on the non-privatization issues remaining after this Court's final judgment in *Saarstahl AG v. United States,* 939 F.Supp. 898 (CIT1996). Saarstahl argues oral argument is "vitally important because of the significant amount of time which has transpired since the issues in this case were last briefed" and because of the issuance of decisions relevant to this proceeding by this Court and the CAFC during that time. (Pl.'s Mot. for Oral Arg. or Alt. for Supp.Brief. at 1.)[2] Alternatively, plaintiff requests it be

---

**1.** As of the date of this opinion, the appeal by the United States had not been docketed.

**2.** The final briefs in this case were filed in April 1994.

allowed to file a supplemental brief on the non-privatization issues, including the issue of allocation. In its initial response to plaintiff's Motion for Oral Argument or Alternatively for Supplemental Briefing, defendant stated it would defer to the discretion of this Court with respect to plaintiff's application for oral argument. (Def.'s Resp. to Pl.'s Mot. for Oral Arg. at 2.) Defendant subsequently moved to suspend supplemental briefing pending resolution of the outstanding motions regarding the allocation issue.

## DISCUSSION

█ Rule 15(a) of the Rules of the United States Court of International Trade, which parallels Rule 15(a) of the Federal Rules of Civil Procedure, provides that once responsive pleadings have been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." U.S. CIT R. 15(a). It is within the discretion of the trial court to grant or deny a motion for leave to amend a complaint. *See Intrepid v. Pollock,* 907 F.2d 1125, 1129 (Fed.Cir.1990) *rev'd on other grounds,* 972 F.2d 1355 (Fed.Cir.1992) ("It is settled that the grant of leave to amend the pleadings ... is within the discretion of the trial court.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)). In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court held the requirement that leave be freely given must be balanced against numerous considerations protecting the rights of the opposing party. The Supreme Court stated:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, futility of

amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* The court must make a *"discretionary* decision, in the sense that the court weigh[ ] considerations such as undue delay, prejudice to the opposing party and the like." *Intrepid,* 907 F.2d at 1129.

Examining the factors set forth in *Foman,* this Court concludes Saarstahl's Motion for Leave to Amend its Complaint must be denied because it comes so late in the proceeding that it would cause undue delay and unfairly prejudice the other parties. Although Saarstahl's assertion that the Court has often permitted parties to amend their complaints, even when the new claim had not been raised at the administrative level, is correct, *see, e.g., Timken Co. v. United States,* 15 CIT 658, 659–60, 779 F.Supp. 1402, 1404–05 (1991); *Ceramica Regiomontana, S.A. v. United States,* 14 CIT 706, 708–09, 1990 WL 160253 (1990) (*citing Hormel v. Helvering,* 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–23, 85 L.Ed. 1037 (1941)); *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 137–38, 583 F.Supp. 607, 611–12 (1984), this Court must also consider those factors cited in *Foman* which apply to this case.

█ To show prejudice, defendant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendment[ ] been timely." *Cuffy v. Getty Ref. & Mktg. Co.,* 648 F.Supp. 802, 806 (D.Del.1986) (citation omitted) (quoted in *Ford Motor Company v. United States,* 896 F.Supp. 1224, 1231–32 (CIT1995)). Saarstahl failed to raise the allocation issue at an earlier date when it had the ability to do so and when it would not have prejudiced the rights of the opposing parties. The Court finds no evidence Saarstahl raised the allocation issue at the administrative level, when the parties would have been able to gather information and present evidence regarding the new allocation methodology. Saarstahl acknowledged this to be the case in its motion when it argued, "[t]he fact that Saarstahl did not expressly raise the issue of the 15–year allocation period at the administrative level does not bar the Court from permitting Saarstahl

to amend its complaint." [3] (Pl.'s Mot. for Leave to Amend Compl. at 5.)

 Although the Court finds Saarstahl's arguments persuasive, in the interest of conserving judicial and party resources and, further, in avoiding substantial prejudice to the other parties, the Court finds it necessary to deny Saarstahl's motion to amend its complaint. In *Te–Moak Bands of Western Shoshone Indians v. United States,* 948 F.2d 1258, 1261 (Fed.Cir.1991) (*quoting Carson v. Polley,* 689 F.2d 562, 584 (5th Cir.1982)), the CAFC stated, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." Although "delay itself is an insufficient ground to deny amendment, if the delay is 'undue' the district court may refuse to permit amendment." *Datascope Corp. v. SMEC, Inc.,* 962 F.2d 1043, 1045 (Fed.Cir. 1992) (citations omitted). The view that delay becomes undue when it prejudices the opposing party is generally accepted. *See Dooley v. United Technologies Corp.,* 152 F.R.D. 419, 425 (D.D.C.1993) ("[A] motion to amend a pleading ... may be denied if the delay causes undue prejudice to the opposing party.") (citation omitted); *United States v. Mexico Feed & Seed Co.,* 980 F.2d 478, 485 (8th Cir.1992). The CAFC also maintained "[a]t some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive." *Te–Moak Bands,* 948 F.2d at 1262–3 (*quoting Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir. 1981)). Although there is no evidence of bad faith by Saarstahl in the present case, unlike the cases Saarstahl cites, the debate over the proper allocation methodology is not a new issue but rather has been a live issue for many years. "It is not information that has only recently come to light." *Te–Moak Bands,* 948 F.2d at 1262 (*quoting Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir.) *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1982)).

The Court does not take comfort in plaintiff's assertion that all of the information necessary for Commerce to calculate a specific AUL for Saarstahl is already part of the administrative record in this case. The Court also disagrees that the time required for remand of this issue would "be only minimal and could not be seen as causing substantial prejudice to the opposing parties." (Pl.'s Mot. for Leave to Amend Compl. at 4.) The Court finds allowing Saarstahl to raise the allocation issue at this time would unfairly prejudice both defendant-intervenor Inland Steel Bar Company as well as the Commerce Department. Application of the new allocation methodology in this proceeding could warrant gathering new information and possibly verification. Commerce has limited resources to perform such acts and if the administrative record is not complete, acquiring the necessary information at this late date would cause undue delay and expense to the parties. As noted by Wright & Miller, "[T]he risk of substantial prejudice increases with the passage of time." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1488 (1971).

The Court also disagrees with Saarstahl's argument that challenging Commerce's use of the 15–year allocation period based upon the IRS tax tables at the administrative level "would certainly have been futile." (Pl.'s Mot. for Leave to Amend Compl. at 6.) Even though Commerce continued to use the 15–year period after this Court struck it down in *British Steel Corp. v. United States,* 10 CIT 224, 238, 632 F.Supp. 59, 68 (1986) and ignored specific challenges to its use, had Saarstahl raised this issue at the administrative level, this Court would have been able to consider the issue on a complete record. Defendant-intervenor points to the challenges to the 15–year allocation period by United Engineering Steels and Unisor–Sacilor, respondents in companion investigations of leaded steel bars from the United Kingdom and France, as examples where the litigants raised their objections to the allocation methodology during the administrative process, despite Commerce's continued use of the 15–

---

**3.** Counsel for Saarstahl also acknowledged Saarstahl did not raise the allocation issue at the administrative level during a phone conference on November 21, 1996.

year period after this Court struck it down in 1986. *See Certain Hot Rolled Lead and Bismuth Carbon Steel Products from France,* 58 Fed.Reg. 6,221, 6,230 (Dep't Comm.1993) (final determ.); *Certain Hot Rolled Lead and Bismuth Carbon Steel Products from the United Kingdom,* 58 Fed. Reg. 6,237, 6,245 (Dep't Comm.1993) (final determ.). As this Court noted in *Budd Co., Wheel & Brake Div. v. United States,* 15 CIT 446, 453, 773 F.Supp. 1549, 1555 (1991) (citation omitted), "[p]laintiff did not attempt to raise its present line of argument before Commerce on the assumption that Commerce would not be amenable to its proposals. This is no excuse for Plaintiff's not exhausting its administrative remedies."

In addition, allowing Saarstahl to raise the allocation issue now would be contrary to this Court's decision in *Geneva Steel v. United States,* 914 F.Supp. 563 (CIT1996). In *Geneva Steel,* although the Court recognized the allocation issue was currently before the Court as a general issue following remand to Commerce in accord with the Court's decision in *British Steel I,* the Court did not allow plaintiff to raise the allocation issue at oral argument because the issue had not been briefed. In the present case, not only was the issue of allocation not previously briefed by the parties, but Saarstahl was not a party to the general issues remand referred to in *Geneva Steel.* In a footnote in *Geneva Steel,* the Court stated, "[a]lthough counsel for Fabfer insisted at oral argument that its 'complaint was very broad' and 'there's room ... for this issue to be alive in this case,' the Court finds otherwise and will not consider the issue of the allocation period in this opinion." *Geneva Steel,* 914 F.Supp. at 604 n. 52 (citation omitted).

■ Finally, this Court notes the mandate of 28 U.S.C. § 2637(d), which directs this Court to require, where appropriate, "the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1988). As the Court stated in *Budd Co., Wheel & Brake Div. v. United States,* 15 CIT 446, 452, 773 F.Supp. 1549, 1554 (1991) (quoting *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946)) "[i]t is well established that '[a] re-

viewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" Exhaustion of administrative remedies is imperative to ensure that the agency and the interested parties fully develop the facts to aid judicial review. *See Budd Co.,* 773 F.Supp. at 1555. Although the Court has discretion to make limited exceptions to the exhaustion requirement in cases where strict enforcement would be inappropriate, this Court is not persuaded it should exercise its discretion to make a new and limited exception in this case.

■ The cases cited by plaintiff as examples of exceptions to the exhaustion requirement are distinguishable from the case at hand. In *Timken Co. v. United States,* 15 CIT 658, 659–60, 779 F.Supp. 1402, 1404–05 (1991), for example, the Court held no exhaustion of administrative remedies is required when a judicial interpretation of existing law intervenes after the remand proceeding changing the agency result. In *Timken Co.,* plaintiff moved to amend its complaint because this Court's ruling in a subsequent case reversed prior ITA practice and could potentially change the outcome of its case. The United States and defendant-intervenor opposed the motion since the issue had not been raised at the administrative level and they believed an amendment would unduly prejudice the government. The Court granted plaintiff's motion, however, holding Timken could not reasonably have known this Court would reverse ITA policy in a later case and as the issue was a purely legal one requiring no additional fact-finding, the government would not be unduly prejudiced by the amendment.

Similarly, in *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 137–38, 583 F.Supp. 607, 611–12 (1984), the Court held exhaustion of administrative remedies is not required when plaintiff raises a new argument purely legal in nature which requires no further agency involvement or when it would have been futile for plaintiff to raise its argument

at the administrative level. In *Rhone Poulenc,* plaintiff moved to amend its complaint after all responsive pleadings were served because another opinion of this Court held invalid the same action the ITA had taken in plaintiff's case. This Court permitted plaintiff to amend its complaint even though plaintiff had not challenged the validity of the regulation at issue before the ITA. The Court stated since the issue was one of law which did not require either additional fact-finding or a new trial, there was no undue prejudice to the government. The Court also held it would have been futile for plaintiff to "argue that the agency should not apply its own regulation ... had plaintiffs raised the alternative arguments different results would not have materialized in the administrative proceedings." *Rhone Poulenc,* 583 F.Supp. at 610. The Court also held "there is no prejudice to defendants stemming from failure to raise this issue at the administrative level." *Id.* at 611. Finally, the Court stated plaintiff could not have anticipated that a court would overturn the regulation. *Id.* at 612.

The exception to the exhaustion requirement set forth in *Timken and Rhone Poulenc*—that exhaustion of administrative remedies is not required when plaintiff raises a new argument purely legal in nature which requires no further agency involvement—does not apply to this case since Saarstahl is not raising a new argument purely legal in nature which does not require additional fact-finding. Quite the contrary, plaintiff's argument would demand considerable agency involvement. Granting plaintiff's motion would necessitate opening up the record and would create undue delay and expenditure of scarce party time and resources. To change the allocation methodology at this stage of the proceeding could warrant a new investigation, gathering new information and then the verification of that additional information. This further agency involvement on remand would certainly cause substantial delay in this already lengthy proceeding and the Court finds that such delay would cause substantial prejudice to Commerce and Inland Steel Bar Company. As defendant points out, this case is more similar to *Budd Co., Wheel & Brake Division,* 15 CIT 446, 452,

773 F.Supp. 1549, 1554–55 (1991) (requiring exhaustion of administrative remedies when plaintiff's arguments are "not purely legal issues requiring no further agency involvement" and when instead "plaintiff seeks a second remand, requiring Commerce to recalculate the circumstance of sale adjustment for devaluation and to conduct an absorption study measuring the incidence of tax pass-through to the Brazilian consumer") or to *Corporacion Sublistatica, S.A. v. United States,* 1 CIT 120, 126–27, 511 F.Supp. 805, 810 (1981) (where defendant's amendment to answer would have resulted in substantial inconvenience, such as a new trial, the Court found prejudice existed and denied a motion to amend).

■ The second exception discussed in *Rhone Poulenc*—that exhaustion of administrative remedies is not required when it would have been futile for plaintiff to raise its argument at the administrative level—also does not apply in this case. Unlike the plaintiff in *Rhone Poulenc,* Saarstahl's challenge was not to an existing valid regulation, but to a methodology that had been struck down by this Court in prior decisions. *See IPSCO, Inc. v. United States,* 12 CIT 359, 373, 687 F.Supp. 614, 626 (1988) (*IPSCO I* ), *aff'd in part, rev'd in part on other grounds,* 899 F.2d 1192 (Fed.Cir.1990); *Ipsco v. United States,* 12 CIT 1128, 1134, 701 F.Supp. 236, 241 (1988) (*Ipsco II* ), *aff'd in part, rev'd in part on other grounds,* 899 F.2d 1192 (Fed.Cir.1990); *British Steel Corp. v. United States,* 10 CIT 224, 236, 632 F.Supp. 59, 68 (1986). Accordingly, although Commerce had rejected challenges to use of its 15–year allocation period, this Court does not believe Saarstahl's challenge to the allocation methodology at the administrative level would have been futile. Although Saarstahl is correct that the Court's holding on allocation in the *British Steel I* and *British Steel III* opinions clarifies the law on this issue and Commerce now uses company-specific average useful life information to allocate nonrecurring subsidies, rather than the 15–year period based upon the IRS tax tables, *see, e.g., Live Swine from Canada; Preliminary Results of Countervailing Duty Administrative Review,* 61 Fed.Reg. 52,426, 52,427

(Dep't Comm.1996), the fact that this Court had already struck down Commerce's methodology in 1986 and 1988 makes plaintiff's argument regarding the exception for new judicial interpretations less applicable to this case. Therefore, notwithstanding the intervention of the judicial interpretation set forth in the *British Steel* opinions, setting aside the exhaustion requirement in this case would unduly prejudice defendant and defendant-intervenor. Opening up the record at this late juncture in the proceeding will result in unfair delay and expense to the parties and improvidently dissipate precious judicial and administrative resources.

CONCLUSION

The Court denies Saarstahl's Motion for Leave to Amend its Complaint and grants defendant's Motion to Strike Paragraph 3 of Plaintiff's Comments on Remand. Plaintiff's application for supplemental briefing is denied. Should the parties wish to renew their application for supplemental briefing on issues other than allocation, this Court will accept any timely application. The Court reserves decision on Saarstahl's Motion for Oral Argument as to other issues besides allocation. As to allocation, Saarstahl's Motion for Oral Argument is denied.

ORDER

Upon consideration of the motions submitted by plaintiff and defendant and the oppositions thereto, and upon due deliberation, it is hereby

**ORDERED** that Saarstahl's Motion for Leave to Amend its Complaint is denied; and it is further

**ORDERED** that defendant's Motion to Strike Paragraph 3 of Plaintiff's Comments on Remand is granted; and it is further

**ORDERED** that Saarstahl's Motion for Supplemental Briefing is denied. Should the parties wish to renew their application for supplemental briefing on issues other than allocation, this Court will accept any timely application. The Court reserves decision on Saarstahl's Motion for Oral Argument as to other issues besides allocation. As to alloca-

tion, Saarstahl's Motion for Oral Argument is denied.