**Slip Op. 99-103**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Taiyuan Heavy Machinery Import and Export Corp., | : | |
| | : | |
| Plaintiff, | : | **Court No. 98-02-00411** |
| | : | **Before: Barzilay, Judge** |
| v. | : | |
| United States of America, | : | |
| Defendant, | : | |
| and | : | |
| Magnesium Corp. of America, | : | |
| Defendant-Intervenor. | : | |
| | : | |

[Plaintiffs' Motion for Judgment Upon the Agency Record denied, case dismissed.]

Decided: October 6, 1999.

Riggle & Craven (David A. Riggle, David J. Craven), for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice (Lucius B. Lau); Christine E. Savage, Attorney Advisor, Office of the Chief Counsel, Department of Commerce, of counsel, for Defendant.

Baker & Botts, L.L.P. (William D. Kramer, Clifford E. Stevens, Jr.), for Defendant-Intervenor.

### OPINION

**BARZILAY, JUDGE:**

Plaintiff has moved for Judgment Upon an Agency Record, pursuant to USCIT R. 56.2 contesting certain parts of the Department of Commerce, International Trade Administration's

("Commerce") final results in a new shipper administrative review, *Pure Magnesium from the People's Republic of China: Final Results of the Antidumping Duty New Shipper Administrative Review*, 63 Fed. Reg. 3085 (Jan. 21, 1998) ("Final Results"). The Court has jurisdiction under 28 U.S.C. § 1581(c) (1994).

## I. BACKGROUND

On May 12, 1995, following an investigation, Commerce published antidumping duty orders covering imports of pure magnesium from the People's Republic of China ("PRC"), the Russian Federation and Ukraine. *See Notice of Antidumping Duty Orders: Pure Magnesium from the People's Republic of China, the Russian Federation and Ukraine; Notice of Amended Final Determination of Sales at Less than Fair Value: Antidumping Duty Investigation of Pure Magnesium From the Russian Federation*, 60 Fed. Reg. 25691 (May 12, 1995). Plaintiff, a Chinese manufacturer/exporter of the subject merchandise, requested Commerce to initiate a new shipper review so that Plaintiff would receive an individually assigned dumping margin instead of the PRC-wide rate of 108.26%. The period of review ("POR") was May 1, 1996 - October 31, 1996. *See* Final Results at 3085. On October 23, 1997, Commerce published its preliminary results finding that Plaintiff was selling the subject merchandise at less than fair value and assigned Plaintiff an 83.92% margin. *See Pure Magnesium from the People's Republic of China: Preliminary Results of Antidumping Duty New Shipper Administrative Review*, 62 Fed. Reg. 55215, 55218 (Oct. 23, 1997) ("Preliminary Results"). On January 21, 1998, Commerce published its Final Results, lowering the margin to 69.53%. *See* Final Results at 3092. Plaintiff timely filed its summons and complaint pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) (1994) challenging certain aspects of Commerce's Final Results.

## II. STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination in an antidumping administrative review, the court is to hold unlawful a determination, finding or conclusion by Commerce that is unsupported by substantial evidence or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938); *accord Matsushita Elec. Indus. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v Federal Maritime Comm.*, 383 U.S. 607, 620 (1966). The court is prohibited from overturning a decision with which it does not agree provided Commerce's decision is supported by substantial evidence and is otherwise in accordance with law. *See Kerr-McGee Chemical Corp. v. United States*, 21 CIT __, __, 985 F. Supp. 1166, 1173-74 (1997) (citing *Consolo*, 383 U.S. at 620), *aff'd* 185 F.3d 884 (Fed. Cir. 1999).

## III. DISCUSSION

Plaintiff argues that Commerce failed to follow its regulations in several respects and that this failure was prejudicial. Plaintiff asserts Commerce erred by not addressing four of the sixteen points contained in Plaintiff's case brief. The four issues Plaintiff claims were not addressed were: 1) the calculation of a normal value ("NV") that exceeded the world market price by 150-225%; 2) the acceptance of information without an attached factual certification; 3) the acceptance of material requesting confidential treatment that did not state reasons for proprietary treatment; and 4) the acceptance of untimely submissions.

A. *Plaintiff's Argument Concerning World Market Prices Did Not Raise a Material Issue That Commerce Needed to Address in the Final Results.*

Commerce is required to publish notice of its determinations in the Federal Register containing "the facts and conclusions of law upon which the determination is based . . . ." 19 U.S.C. § 1673d(d). The Statement of Administrative Action accompanying the Trade Agreements Act of 1979 explained the publication requirement as limited to material issues of fact or law. *See Trade Agreements Act of 1979, Statements of Administrative Action*, H. Doc. No. 96-153 425 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 693 (1979) ("[A] statement of findings of fact and conclusions of law on all material issues shall be made available to the Commission, the interested parties and public."). The common understanding of material as it is used in this context is "[i]mportant; more or less necessary; having influence or effect; going to the merits; having to do with the matter, as distinguished from form." BLACK'S LAW DICTIONARY 976 (6th ed. 1990). Commerce did not have to address Plaintiff's argument about the relationship of world market prices to the constructed NV because the issue was not material in that it would not have affected the final determination in this case.

Even if Commerce were to use the world market price as a check on the NV calculation, the underlying methodology and results would be the same. In a case involving a non-market economy country[1] ("NME"), Congress has directed Commerce to determine NV "on the basis of the value of the factors of production utilized in producing the merchandise. . . ." 19 U.S.C. § 1677b(c)(1). The statute continues by directing Commerce to use the best available information in valuing the factors. *See id.* Finally, the statute sets forth a non-exclusive list of factors and the means by which

---

[1] Plaintiff did not dispute the PRC's designation as such.

Commerce is to value them. *See id.* at §§ 1677b(c)(3)-(4). Nowhere does the statute direct Commerce to compare NV calculated from the factors of production to the world market price. In fact the nature of the statutory scheme precludes using world market price as a substitute for the constructed NV.

What Plaintiff's argument amounts to is that somehow Commerce failed to use the best available information to arrive at its calculated NV because NV was out of line with world market price. Plaintiff does not contend that Commerce should have substituted the world market price for the calculated NV, only that world market price was a benchmark for accuracy.[2] Therefore, Commerce was required to explain whether it used the best available information in valuing each factor of production, which, as discussed *infra*, it did. To do otherwise would contravene the statutory directive to "determine the normal value of the subject merchandise on the basis of the value of the factors of production . . . ." 19 U.S.C. § 1677b(c)(1). Thus, the issue of world market prices as they relate to constructed NV was not material and did not need to be addressed in the Final Results since the statute directs Commerce specifically to consider whether the values for each factor of production were based on the best available information.

*B. Procedural Irregularities Did Not Substantially Prejudice Plaintiff.*

The rules in question were not intended to confer important procedural benefits, so for Plaintiff to prevail on its procedural claims it must demonstrate that it was substantially prejudiced by Commerce's actions. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539

---

[2] The Court does not reach the issue of whether comparing world market price to NV in an NME case is permissible. The Court notes that the Federal Circuit has affirmed the use of world market price to value a factor of production, *see Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1378 n.5 (Fed. Cir. 1999), but it has never held it to be a benchmark for NV in an NME case.

(1970) ("'[I]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." (quoting *NLRB v. Monsanto Chemical Co.*, 205 F.2d 763, 764 (8ᵗʰ Cir. 1953)); *see also Oy v. United States*, 61 F.3d 866, 875 (Fed. Cir. 1995) (quoting *American Farm Lines*); *Ferro Union, Inc. v. United States*, 44 F. Supp.2d. 1310, 1316-17 (CIT 1999) (same).

Plaintiff's procedural grievances can be discussed together since they all involve similar alleged underlying errors.  Plaintiff contends that Commerce did not follow its regulations governing submission of information.  If Commerce had rejected all of the nonconforming material, its decision would have not have been based on substantial evidence on the record.  The regulations at issue govern submission of certifications of factual accuracy,[3] business proprietary information[4] and written argument.[5]

Plaintiff argues that Commerce's failure to address its procedural grievances on the record deprives the court and Plaintiff of understanding the agency's rationale.  The Court does not agree with the Plaintiff that Commerce had to explain its reasons in the Final Results.  An agency is free

---

[3] 19 C.F.R. § 353.31(i) (1997) provides that "[a]ny interested party which submits factual information to the Secretary must submit with the factual information the certification [stating the information is accurate and if submitted by counsel that there is no reason to believe it contains any material misrepresentations or omissions of fact]."

[4] 19 C.F.R. § 353.32(a)(3) (1997) provides that a person who submits factual information with a request for proprietary treatment "shall provide a full explanation why each piece of factual information subject to the request is entitled to proprietary treatment . . . ."

[5] 19 C.F.R. § 353.31(a)(3) provides that "[t]he Secretary will not consider in . . . the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit.  The Secretary will return such information to the submitter with written notice stating the reason for the return of the information."

to relax its procedural requirements where substantive rights are not affected and absent a showing of substantial prejudice that decision is not reviewable.  *See American Farm Lines*, 397 U.S. at 538-539.  Therefore, while it was unnecessary for Commerce to address Plaintiff's procedural complaints in the Final Results the Court will treat the issue as whether Commerce's actions substantially prejudiced Plaintiff.

Defendant-Intervenor failed to include the requisite certification with a number of submissions of factual information.  On October 27, 1997, pursuant to Commerce's instructions, Defendant-Intervenor submitted a certification covering all of the submissions which lacked it.  *See* Pub. Doc. No. 76, fiche 17 ("A.R."), at frame 93.  Plaintiff recognized the Defendant-Intervenor's belated submission of the certification of factual accuracy in its case brief to Commerce.  *See* A.R. 21 at frame 21.  However, Plaintiff did not argue that it suffered any harm due to the late submission. *See* A.R. 21 at frames 21-22.  Furthermore, Commerce's regulations provide that "[a]t any time during the proceeding, the Secretary may request written argument on any issue from any interested party."  19 C.F.R. § 353.38(a).  Since Plaintiff did not make a showing of harm to Commerce and since Commerce was free to request argument on any issue at any time, Plaintiff has not demonstrated substantial prejudice.

Next in the litany of procedural grievances comes Commerce's failure to reject factual submissions where Defendant-Intervenor requested proprietary treatment without providing a reason.[6]  As both Commerce and Defendant-Intervenor point out, the only party that requested confidential treatment of its information was the Plaintiff.  Any information that Defendant-

---

[6] While Defendant argues that Plaintiff failed to exhaust its administrative remedies by not pointing to specific faulty submissions, the Court assumes *arguendo* that Plaintiff has exhausted its administrative remedies on this point.

Intervenor submitted which contained Plaintiff's confidential data had to be submitted pursuant to a request for confidential treatment. While it would not create much of a burden for Defendant-Intervenor to have provided this as a reason, it certainly does not constitute substantial harm such that remand is required, or that the information should be removed from the administrative record. Commerce's regulations give the Secretary discretion to return noncompliant factual submissions but with the understanding that a compliant resubmission may be made. *See* 19 C.F.R. § 353.32(d). Commerce's failure to return the information did not substantially prejudice Plaintiff since Defendant-Intervenor would have had the opportunity to correct its mistake, and moreover, the information for which proprietary treatment was requested was Plaintiff's.

Finally, Plaintiff argues that Commerce accepted untimely submissions in this case from the Defendant-Intervenor, petitioner below, while it regularly holds respondents to strict deadlines. However, the Plaintiff does not claim that in this case it was held to a different standard, nor can it since Commerce accepted an untimely submission from it. *See* A.R. 12 at frame 22. A showing that in other cases Commerce has held respondents to regulatory time limits is insufficient to demonstrate that substantial prejudice occurred in this case.

More importantly, Plaintiff claims that Defendant-Intervenor's untimely submission of its rebuttal brief denied Plaintiff the opportunity to participate meaningfully in the public hearing because it was unsure of what constituted confidential information. Plaintiff's contention in this regard could demonstrate substantial prejudice, but after review of the transcript of the hearing, the Court is satisfied no such prejudice resulted. *See* A.R. 24 at frame 1. Plaintiff did not raise the issue to Commerce's hearing examiner until the end of its direct presentation and it did not mention any specific issues on which it could not comment. *See* A.R. 24 at frames 37-38. Plaintiff also

responded to all of the questions posed to it without mentioning its inability to comment due to the

untimely filing of Defendant-Intervenor's public rebuttal brief. *See* A.R. 24 at frames 29-30, 67-68,

70-73. Moreover, Plaintiff cites no specific piece of evidence to the Court that it was unable to

discuss, but rather argues it was subject to a period of confusion shortly before the hearing. Plaintiff

has not demonstrated that it was denied an opportunity to participate meaningfully in the hearing,

nor has it otherwise shown that untimely submissions were accepted by Commerce from Defendant-

Intervenor but rejected by Commerce from it. Accordingly, Plaintiff was not substantially prejudiced

by any of the late filings.

C.      *Commerce's Decision to Use Certain Surrogate Values as the Best Available Information*
        *Was Supported By Substantial Evidence.*

The Federal Circuit has noted the troubles that surround constructing NV on the basis of the

factors of production, pursuant to 19 U.S.C. § 1677b(c). *See e.g.*, *Sigma Corp. v. United* States, 117

F.3d 1401, 1408 (Fed. Cir. 1997) ("[T]he process of constructing foreign market value for a producer

in a nonmarket economy country is difficult and necessarily imprecise. . . ."); *Nation Ford Chemical*

*Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (quoting *Sigma Corp.*). While the statute

provides guidelines, Commerce is accorded "wide discretion in the valuation of factors of production

in the application of those guidelines." *Nation Ford Chemical Co.*, 166 F.3d at 1377 (citing *Lasko*

*Metal Prods., Inc. v. United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994) (internal citations omitted)).

Whether the material Commerce uses constitutes the best available information will vary dependent

on the circumstances. *See id.*

On repeated occasions, Commerce has expressed its practice with regard to surrogate price

data. Commerce prefers "to use surrogate price data which is: (1) an average non-export value; (2)

representative of a range of prices within the POR if submitted by an interested party, or most

contemporaneous with the POR; (3) product-specific; and (4) tax-exclusive." *Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China; Final Results of Antidumping Duty Administrative Reviews*, 63 Fed. Reg. 16758, 16759 (Apr. 6, 1998)[7] (citing *Final Results of Antidumping Duty Administrative Review; Sebacic Acid from the People's Republic of China*, 62 Fed. Reg. 10530, 10534 (March 7, 1997); *see also Notice of Final Determinations of Sales at Less Than Fair Value: Brake Drums and Brake Rotors From the People's Republic of China*, 62 Fed. Reg. 9160, 9163 (Feb. 28, 1997) ("[W]e selected the surrogate values based on the quality and contemporaneity of the data."); *Notice of Final Determination of Sales at Less Than Fair Value: Melamine Institutional Dinnerware Products from the People's Republic of China*, 62 Fed. Reg. 1708, 1711 (Jan. 13, 1997) (same); *Notice of Final Determinations of Sales at Less Than Fair Value: Bicycles from the People's Republic of China*, 61 Fed. Reg. 19026, 19030 (Apr. 30, 1996) (same).

In accordance with 19 U.S.C. § 1677b(c)(4), Commerce chose India and Indonesia as the most comparable countries to the PRC in terms of overall economic development and because both were significant producers of comparable merchandise, which Commerce determined to be aluminum. *See* Preliminary Results at 55217. The factors of production which Commerce valued were: raw materials, packing materials, labor, diesel fuel, electricity, overhead, selling, general and administrative expenses ("SG&A"), and profit. *See id.* Plaintiff does not dispute Commerce's designation of India and Indonesia as appropriate surrogates, but contests the use of certain

---

[7] The Court recognizes that the date of initiation in *Heavy Forged Hand Tools* was March 18, 1997, *see* 62 Fed. Reg. 12793, while the date of initiation in the present case was December 31, 1996. *See* 61 Fed. Reg. 69067. However the time periods are not sufficiently separate in time to dissuade the Court that Commerce's practice was different.

information to value various factors.

      1.     Substantial Evidence Supports Commerce's Valuation of Overhead, SG&A and Profit.

Plaintiff contends that Commerce should not have used a 1996 financial report of Southern Magnesium and Chemicals Limited because the report did not comport with generally accepted accounting principals ("GAAP") in India, the data was inconclusive and significant aberrations during fiscal year 1996 made the data unreliable. The Final Results state that Commerce used the financial report over Plaintiff's objections because it was the most product-specific, more contemporaneous to the POR, audited by an Indian accounting firm, and there was no evidence that the data was not reasonably representative of the experience of other Indian producers. *See* Final Results at 3088. In reviewing Commerce's determination the court's role is to determine "whether the record adequately supports the decision . . . not whether some other inference could reasonably have been drawn." *Daewoo Electronics v. United States*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (citations omitted).

Commerce's decision to use the 1996 financial report of Southern Magnesium and Chemicals is supported by substantial evidence and in accordance with law. An Indian auditor's report is attached to the report which states that "proper books of account as required by law have been kept by the Company so far as appears from our examination of such books." A.R. 19 at frame 48. Furthermore, the data was more contemporaneous with the POR and it was more product specific. The Reserve Bank of India Bulletin, which Plaintiff submitted, although dated November, 1996 reported information from 1990-1993. *See* A.R. 18 at frame 14. Moreover, the data was for the processing and manufacturing of metals, chemicals and products thereof. *See id.* Commerce instead used data from a producer of the subject merchandise in accordance with its administrative practice.

*See Notice of Determination of Sales at Less Than Fair Value; Polyvinyl Alcohol from the People's Republic of China*, 61 Fed. Reg. 14,057, 14,061 (March 29, 1996) ("For valuing such factors as factory overhead, general and administrative expenses and profit, the Department seeks to base surrogate values on industry experience closest to the product under investigation."). Finally, Plaintiff raised the argument that Southern Magnesium's data was affected by significant aberrations during fiscal year 1996, thereby making the data unreliable. *See* Final Results at 3088. However, Commerce addressed this in the Final Results, finding that Plaintiff provided no support for its statement. *See id.* Thus, Plaintiff failed to point to record evidence on which Commerce could base a finding that Southern Magnesium's data was unreliable. Accordingly, Commerce's determination was supported by substantial evidence and in accordance with law.

2.      Substantial Evidence Supports Commerce's Valuation of Ferrosilicon.

Plaintiff contests Commerce's decision to value ferrosilicon by averaging the prices contained in the *Metal Bulletin* and the *Iron and Steel Newsletter*. Plaintiff contends that the *Metal Bulletin* did not provide sufficient details or reliable information for the values and that the *Iron and Steel Newsletter* and a 1995-1996 financial report of an Indian producer should have been used. Furthermore, Plaintiff argues that Commerce should not have excluded values for nonmarket economies because they represented world market prices.

Commerce's decision to average values from the *Metal Bulletin* and the *Iron and Steel Newsletter* and to reject the financial report is supported by substantial evidence. Constructing NV in a NME case is "difficult and necessarily imprecise." *Sigma Corp.*, 117 F.3d at 1407. Commerce acted within the guidelines set by the statute in averaging the values contained in the *Metal Bulletin* and the *Iron and Steel Newsletter* and Plaintiff has failed to show that the decision fell outside the

wide latitude afforded to Commerce. *See Nation Ford Chemical Co.*, 166 F.3d at 1377. Commerce chose to average the values from both publications reasoning that the time period in both publications was neither more nor less contemporaneous than the POR. *See* Final Results at 3089. Commerce did not rely on the financial report submitted by Plaintiff because it found the price aberrationally low compared to the statistics from *Monthly Statistics of the Foreign Trade of India* ("*Monthly Statistics*") and the *Metal Bulletin*. *See id.* Rather than using just the information contained in the *Metal Bulletin*, as Defendant-Intervenor desired, Commerce averaged both values, excluding those from NMEs.

Furthermore, Commerce's decision to exclude NMEs is in accordance with its practice and Congressional intent, and thus in accordance with law. *See Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From Romania: Final Results of Antidumping Duty Administrative Review*, 62 Fed. Reg. 37194, 37195 (July 11, 1997); *see also* S. Rep. No. 93-1298, at 174 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7311 ("[T]he supply and demand forces [in state-controlled economies] do not operate to produce prices, either in the home market or in *third countries*, which can be relied upon for comparison purposes." (emphasis added)); *see also* H.R. Conf. Rep. 100-576, at 590 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1623 (when performing a factors of production assessment, "Commerce shall avoid using any prices which it has reason to believe or suspect may be dumped or subsidized prices."). Regardless of whether the reported prices were on the "world market," Congress' statements above, made in the context of explaining why a different methodology applies in an NME case, applies equally to what constitutes the best available information.

3.       Substantial Evidence Supports Commerce's Valuation of Dolomite.

Plaintiff argues that Commerce's decision to use data from a single company's financial report to value dolomite was not based on substantial evidence because single company data is subject to manipulation.  Plaintiff submitted the *1994 Index Numbers of Wholesale Price in India* ("*Index Numbers*"), which it claimed had more current data making it more contemporaneous to the POR.  Commerce used the financial report because it found the data to be more representative and more contemporaneous to the POR.  *See* Final Results at 3089.  The *Index Numbers* contained the averaged and indexed values for three grades of dolomite, Banduan, Lumps (1"-3"), Birmitrapur, Metallurgical Grade and Birmitrapur, BF Grade (25mm-75mm).  *See* A.R. 18 at frame 23. Commerce found that the financial report contained the value for metallurgical grade dolomite since it came from an Indian producer of ferroalloy, which is a metallurgical process.  While it might be possible reasonably to draw another inference from the record on this point, the court is not to disturb Commerce's finding unless it is not based on adequate record support.  *See Daewoo Electronics*, 6 F. 3d at 1517-18.  Since metallurgical grade dolomite is used in the production of magnesium, the value contained in the financial report was more specific than the averaged prices contained in the *Index Numbers*.  Further, Commerce chose to use the financial report over the *Index Numbers* because there was no indication of why the prices from 1994 were selected for indexation.  *See* Final Results at 3088-89.  Thus, the Court finds that Commerce's valuation of dolomite was based on substantial evidence and was in accordance with law.[8]

---

[8]  Plaintiff also asserts Commerce failed to subtract transportation costs from the reported price for dolomite.  Plaintiff failed to cite any evidence to support its position, nor did it demonstrate that the *Index Numbers* were ex-factory.  Commerce's decision not to accept a position espoused through conclusory statements does not render its determination unsupported by substantial evidence or otherwise not in accordance with law.

4. Substantial Evidence Supports Commerce's Valuation of Coal.

Plaintiff argues that Commerce should have used the value for coal contained in the *Index Numbers*. Before Commerce, however, Plaintiff admitted that India had price controls on coal. *See* A.R. 10 at frame 75. Accordingly, the values contained in the *Index Numbers* would reflect such price controls. Commerce used the April 1995- March 1996 price from *Monthly Statistics* because Plaintiff provided no reason for finding the values unreliable. *See* Final Results at 3090. Furthermore, Commerce did not use the *Index Numbers* because there was no explanation of how the product-specific indices were determined or why 1994 prices were selected. *See* Final Results at 3090. Commerce also found the price reported in the *Monthly Statistics* more contemporaneous with the POR. Although Plaintiff maintains that Commerce has a preference for using actual surrogate data, as opposed to import data, it provides no authority for the statement. In fact, Commerce has used import statistics when the domestic prices appeared to be governed by price controls. *See Notice of Final Determination of Sales at Less Than Fair Value: Brake Drums and Rotors from the People's Republic of China*, 62 Fed. Reg. 9,160, 9,169 (Feb. 29, 1997). Additionally, the Federal Circuit has affirmed Commerce's use of import prices even when domestic prices were used to value other factors of production. *See Nation Ford Chemical Co.*, 166 F.3d at 1378. Thus, the Court finds that Commerce's valuation of coal was based on substantial evidence and is in accordance with law.

5. Substantial Evidence Supports Commerce's Valuation of Barium Chloride.

Plaintiff claims that Commerce should have used Indonesian import values instead of data from *United Nations Import Statistics* for January - December 1996. The *United Nations Import*

*Statistics* contain import data from the United States while U.S. export data does not show exports of barium chloride to India. As a result, Plaintiff maintains that the *United Nations* data is inherently suspect because it contains values for products distributed indirectly, which would necessarily be of greater cost; and therefore, Commerce should have used Indonesian Import Data. Commerce based its decision to use the *United Nations Import Statistics* on its finding that it was more contemporaneous and that the discrepancy between two different countries' import and export data could result from various factors which would not mean the data is erroneous. *See* Final Results at 3090. Commerce also prefers to use data from a single surrogate country whenever possible. *See Notice of Final Determination of Sales at Less Than Fair Value: Certain Cut-to-Length Carbon Steel Plate from the Russian Federation*, 62 Fed. Reg. 61,787, 61,790 (Nov. 19, 1997) (citing *Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 21,058, 21,062 (May 18, 1992)). Since there was no indication that the Indonesian Import Data did not also reflect greater costs due to indirect shipments, Commerce's decision to use the *United Nations Import Statistics* was based on substantial evidence and was in accordance with law.

6.      Substantial Evidence Supports Commerce's Valuation of Electricity.

Plaintiff proposed that Commerce use a 1995 value for electricity from the *Confederation of India Industrial Handbook* because it provided electricity rates for rural areas in India and Plaintiff's plant is located in a rural area in China. Commerce instead used an August 1996 price for electricity in India reported in *Business World* because it was more contemporaneous with the POR. Furthermore, Commerce based its decision on the fact that the *Confederation of India Industrial Handbook* listed a rural rate for only one Indian state, which led Commerce to the

conclusion that urban and rural rates in India are not different as a whole. *See* Final Results at 3091. Plaintiff, again, did not present Commerce with any evidence that the *Business World* report was unreliable, rather Plaintiff claimed the publication was one not normally considered by Commerce. Yet Commerce, in its letter to the parties inviting submissions on the factor valuation, stated it would use publicly available published information from surrogate countries. *See* A.R. 18 at frames 4-7. The *Business World* report was of the type Commerce notified the parties it would consider and Commerce was simply faced with choosing one source over another. Plaintiff did not provide any record support, beyond its own unsupported statements, that the *Business World* report contained inaccurate information. Accordingly, Commerce's decision to use the rate for electricity listed in *Business World* was based on substantial evidence and in accordance with law.

       7.      Commerce Deducted Sales and Excise Taxes Where Appropriate.

Plaintiff contends that Commerce failed to deduct taxes from surrogate values assigned to raw materials. Commerce addressed this issue in the Final Results and deducted an amount for excise and sales tax from the value for sulfuric acid. *See* Final Results at 3091. However, Commerce did not deduct sales and excise taxes from any of the other raw material values because its practice is only to remove such values when there is an affirmative indication of their presence. *See id.* Plaintiff did not point to any specific evidence indicating that the values contained excise and sales tax, instead it relied on general information concerning Indian tax practices. Since Plaintiff did not present information about a specific surrogate value containing excise and sales tax, Commerce's decision to deduct excise and sales tax from the surrogate value for sulfuric acid and no others is based on substantial evidence and is in accordance with law.

*D.* *The Court Will Not Consider the Effect of the International Trade Commission's Remand Determination.*

Plaintiff urges the court to recognize the International Trade Commission's ("ITC") determination in *Magnesium from Ukraine*, USITC Pub. 3113, Inv. No. 731-TA-696-698 (Views on Remand) (June 1998).[9] Plaintiff claims that the court has jurisdiction under 28 U.S.C. § 1581(i). However, Plaintiff did not include this cause of action in its complaint, nor did it seek leave to amend its complaint. Because the underlying claim presents a number of complex jurisdictional and substantive issues, it would be an abuse of discretion for the court to amend the complaint *sua sponte* or to read it in such a way that would effectively amend it. Furthermore, the statute of limitations for claims under 28 U.S.C. § 1581(i) is two years, *see* 28 U.S.C. § 2636(i), therefore Plaintiff has the ability to file a separate action if it desires to pursue the matter.

USCIT R. 15(a) provides that after the time for amending of right has passed "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Even in instances where leave to amend is sought, the court must examine whether the amendment would cause undue delay or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Intrepid v. Pollock*, 907 F.2d 1125, 1128 (Fed. Cir. 1990), *rev'd on other grounds*, 972 F.2d 1355 (Fed. Cir. 1992), *Saarstahl AG*

---

[9] In its remand determination, the ITC found that "an industry in the United States was not materially injured or threatened with material injury by reason of imports of pure magnesium from Ukraine . . . ." *Magnesium from Ukraine*, USITC Pub. 3113, Inv. No. 731-TA-696-698 (Views on Remand) (June 1998). As a result, Commerce has revoked the outstanding antidumping duty order, but only with respect to Ukraine. *See* 64 Fed. Reg.46182 (Aug. 24, 1999). The ITC's original injury determination and its remand decision were based on cumulated imports from three countries (Russia, Ukraine and China). Therefore, Plaintiff claims there is no valid antidumping duty order as to any country in light of the ITC's remand decision. As discussed, the Court declines to address this matter.

*v. United States*, 20 CIT 1413, 1417, 949 F. Supp. 863, 866 (1996), *aff'd in part, rev'd on other grounds*, 177 F.3d 1314 (Fed. Cir. 1999). A party's inability to present facts or evidence because of an untimely amendment are considered prejudicial, *see Saarstahl*, 20 CIT at 1417, 949 F. Supp. at 865, while in assessing whether delay is undue the court may consider whether a litigant failed to assert the claim as soon as it was possible to do so. *See Saarstahl*, 20 CIT at 1417-18, 949 F. Supp. at 867.

In this case, Plaintiff altogether has failed to seek leave to amend its complaint. Plaintiff first included its request for relief on December 22, 1998, when it filed its Motion for Judgment Upon an Agency Record. The underlying vote that gave rise to Plaintiff's request was made on June 24, 1998. *See* 63 Fed. Reg. 33093, 33094 (June 17, 1998). Even if the court's decision affirming the ITC on October 20, 1998, is the relevant date for seeking leave to amend the complaint, almost two months passed without Plaintiff acting. Plaintiff's failure to seek leave to amend the complaint deprived the Defendant of the opportunity to oppose the motion and to contest the jurisdictional issues raised through any number of procedural devices. It would be even more prejudicial for the Court to read the complaint in a manner that would effectively amend it without providing the Defendant any briefing.[10] In light of the foregoing concerns, it would be an abuse of discretion for the court either to amend the complaint *sua sponte* or to consider the issue in any other manner.

---

[10] Nor is this a case where the underlying claim for relief could have been gleaned from the complaint. It is axiomatic that the Federal Rules require only notice pleading. However, Plaintiff requests the court to order the antidumping duty order to be revoked, a request that the Defendant simply could not have expected from the complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Judgment Upon an

Agency Record.  Judgment will be entered accordingly.


Dated: _____                                    _____
      New York, NY                                                        Judith M. Barzilay
                                                       Judge