TE–MOAK BANDS OF WESTERN SHO-
SHONE INDIANS OF NEVADA, et
al., Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–
Appellee.

No. 91–5053.

United States Court of Appeals,
Federal Circuit.

Nov. 7, 1991.

Rehearing Denied Dec. 10, 1991.

Suggestion for Rehearing In Banc
Declined Dec. 19, 1991.

Charles A. Hobbs, Hobbs, Straus, Dean
& Wilder, Washington, D.C., argued for

plaintiffs-appellants, with him on the brief was Frances L. Horn.

Peter A. Appel, Dept. of Justice, of Washington, D.C., argued for defendant-appellee, Richard B. Stewart, Asst. Atty. Gen. and Robert L. Klarquist, Atty., Dept. of Justice, were on the brief for defendant-appellee.

Before LOURIE, Circuit Judge, BENNETT, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

BENNETT, Senior Circuit Judge.

The Te–Moak Bands of Western Shoshone Indians of Nevada appeal the judgment of the United States Claims Court, 18 Cl.Ct. 74 (1989), which granted the United States' (Government) motion to dismiss the Indians' water claim exceptions (Exceptions 15 & 16, filed June 29, 1982) to the Government's accounting report. The Claims Court held that these exceptions were outside the scope of their original accounting petition, did not relate back to the accounting claims of the original petition and were thus barred by the Indian Claims Commission Act's limitations provision, 60 Stat. 1052 (1946).[1] This court affirms the Claims Court's judgment on alternative grounds.

## BACKGROUND

On August 10, 1951, the Western Bands of the Shoshone Nation, represented by the Te–Moak Bands, filed a claim before the Indian Claims Commission (Commission) seeking relief for the alleged taking of Western Shoshone lands without just compensation and requesting an accounting of funds and proceeds held by the Government in trust accounts for the Western Shoshone, pursuant to trusts created as a result of the Treaty of Ruby Valley in

1863. In 1957, the Commission severed the accounting claim from the takings claim.[2]

On the takings issue, in 1962 the Commission found that Western Shoshone lands had been taken. In 1979, the Commission certified to the General Accounting Office an award of $26,145,189.89 and the case was closed in 1980, with attorneys fees proceedings continuing into 1981. The Secretary of the Interior was required to submit a distribution plan for remitting the award.

On the accounting claim, plaintiffs filed an amended petition for a general accounting in 1967, 10 years after the accounting was ordered severed from the taking claim. The General Services Administration (GSA) filed its accounting report in response to the petition in 1968. Plaintiffs filed two sets of exceptions to the GSA report (in 1969 and 1973), alleging 14 separate violations of the trust agreement, citing misuse and failure to account for certain items in the trust. In 1978, the accounting claim was transferred from the Indian Claims Commission to the Court of Claims and on October 7, 1982, it was transferred to the Claims Court. However, before transfer to the Claims Court, on June 29, 1982, plaintiffs filed three additional exceptions to the GSA accounting report. Two of these exceptions (Exception 15 & Exception 16) referred to the Government's alleged misuse of and failure to protect Western Shoshone water rights on the reservation. Specifically, the exceptions charged that (1) the Government was liable for failing to provide reservoirs for the reservations granted to the Western Shoshone under the Treaty of Ruby Valley, and that (2) the Government, in violation of *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), failed to stop white settlers from diverting water resources away from the reservations.[3]

---

1. The limitations provision of the Act stated: The Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress.
60 Stat. 1050, 1052 § 12.

2. This case involves only the severed general accounting claim.

3. The Supreme Court in *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), held that "where land in territorial status was reserved by treaty to an Indian tribe, there was impliedly reserved for the Indians, and withheld from subsequent appropriation by others, water of the streams of the reservations necessary

In 1987, the Government, represented by the Environmental and Natural Resources Section of the Justice Department, moved to dismiss the Western Shoshone's 1982 water-related claims (Exceptions 15 & 16) as being outside the scope of the 1951 petition, arguing that these later filed claims did not relate back to the original petition. The Claims Court severed these claims from plaintiffs' other objections and found that plaintiffs' water claims in Exceptions 15 and 16 were outside the scope of the original accounting claims in the 1951 petition and thus could not relate back to the original petition under the Commission's version of Fed.R.Civ.P. 15(c).

## DISCUSSION

This court's function on review is to determine whether the Claims Court erred in applying a relation back analysis to this case. That inquiry is not restricted to consideration of whether the requirements of Fed.R.Civ.P. 15(c) were met in the circumstances of this case. We must also determine whether the Claims Court abused its discretion by allowing the Te–Moak Bands to file their 1982 Exceptions to the GSA accounting report under Fed.R.Civ.P. 15(a). *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971) (determining "when justice so requires" that amendments under 15(a) be granted rests within the sound discretion of the trial court); *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed.Cir.1989) ("It is well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court").

Fed.R.Civ.P. 15(a) states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....[4]

The Supreme Court, interpreting Rule 15(a) in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), stated:

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."* Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court,....

*Foman*, 371 U.S. at 182, 83 S.Ct. at 230 (emphasis added). As explained in *Foman*, reasons for denying leave to amend pleadings under Rule 15(a) may include undue delay, bad faith, dilatory motive, failure to correct deficiencies which could have been

for the irrigation of their lands." Felix S. Cohen, Handbook of Federal Indian Law 316 (1945). The *Winters* decision effected a "prohibition against the diversion of water from a stream above and outside the reservation insofar as such diversion deprives the tribe of water necessary for the irrigation of tribal lands. In other words, these reserved rights are the property of the Indians to be protected by the Federal Government and no appropriation of water either under state or federal laws which reduces the amount of water in a stream within an

Indian reservation below the amount necessary for irrigation of Indian lands is valid." *Id.* at 317.

4. The Claims Court based its rules, the RUSCC, on the Fed.R.Civ.P., incorporating them "to the extent that they appropriately can be applied to proceedings in this court." RUSCC 1(b). RUSCC 15(a) is not materially different from Fed.R.Civ.P. 15(a).

cured earlier and undue prejudice to the non-amending party by allowance of the amendment. *See Mitsui Foods,* 867 F.2d at 1403–04.

The chronological history of the accounting claims in this case is as follows:

July 5, 1957—Indian Claims Commission ordered the severance of the causes of action; the accounting claim was separated from the takings claim

May 18, 1967—The Tribe filed its amended accounting claim petition

Sept. 18, 1968—Government filed its Initial GSA Accounting Report

February 26, 1969—The Tribe filed 11 exceptions to the GSA report

July 30, 1970—GSA filed a Supplemental Accounting Report

November 28, 1973—The Tribe filed three supplemental exceptions to the GSA report

July 26, 1974—GSA filed a supplemental accounting with information on the Treaty of Ruby Valley trust fund and the IMPL trust fund, pursuant to *Te-Moak Bands of W. Shoshone Indians,* 23 Ind.Cl.Comm. at 70.

1974–1982—Delay, attributed by current counsel to an "erosion of the relationship between claims counsel ... and the Western Shoshones who believed themselves entitled to the land itself and not its 1872 value, [which] resulted in a suspension of contract relations between ourselves [counsel] as claims counsel and the then-ascendant leadership of the Western Shoshone. This caused almost a shutdown of the accounting case until 1982, ...." In 1982, the Te–Moak band requested that claims counsel complete the case.

June 29, 1982—The Tribe filed three supplemental and amended exceptions to the GSA accounting which included Exceptions 15 & 16, which are those at issue here.

For the reasons set forth below, we conclude that Exceptions 15 and 16 should not have been allowed to have been filed because they ran afoul of the requirements for amendment of pleadings in Fed. R.Civ.P. 15(a): because of the "apparent reasons" that they could have been cured by earlier amendment, and were filed after a period of undue delay.[5]

## COULD HAVE BEEN CURED EARLIER

Our predecessor court, the United States Court of Claims, stated in *Navajo Tribe of Indians v. United States,* 624 F.2d 981, 224 Ct.Cl. 171 (1980):

In these Navajo cases, the trial judge commented unfavorably on the continuous flow of exceptions and supplemental exceptions from the plaintiff, and ruled that the supplemental exceptions then before him "must be the last." We confirm and emphasize that holding.[9] There must be an end to the filing of exceptions to the existing accounting reports in these Navajo cases, and in other Indian accounting cases there should not be allowed the successive filings of exceptions to the same reports which have been permitted in the present cases.[10]

*Id.* 624 F.2d at 985 (footnote 9 omitted). Footnote 10 states:

As Trial Judge Bernhardt pointed out: "It has been 17 years since the filing of the 1961 [Accounting] Report at which the present supplemental exceptions are aimed. *The grist of the supplemental exceptions could have been filed at the time the original exceptions were filed in 1970, and for the most part (so far as we can determine from a cursory comparison) relate to new matters not raised before.* Advent of new counsel may explain, but does not extenuate, endless second thoughts as to deficiencies of the 1961 Report."

*Id.* (emphasis added).

The Fifth Circuit in *Carson v. Polley,* 689 F.2d 562, 584 (5th Cir.1982), stated that "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." In *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,*

---

**5.** Because we affirm the Claims Court on the grounds of 15(a), we need not reach the relation back analysis the Claims Court employed in its opinion.

690 F.2d 1157, 1163 (5th Cir.) *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1982), the Fifth Circuit found that the Chitimachas "failed to correct pleading deficiencies when given the opportunity" even though the originally excluded "information was available to the Chitimachas long before the first amendments were filed. It is not information that has only recently come to light." *Id.* at 1164.

In an attempt to distinguish themselves from rulings such as those in *Chitimacha* and *Navajo Tribe,* the petitioner appears to argue that it could not have proffered Exceptions 15 and 16 earlier because these claims were the result of "independent research" undertaken by the petitioners after the filing of the GSA's accounting report. *See* 18 Cl.Ct. at 81. The petitioner states that once the Te–Moak Bands requested that their claims counsel complete the case and once its files were reactivated, counsel "made a comprehensive review of the badly fragmented record to be sure that all claims revealed by the Government's accounting and the other parts of the record had been spelled out in the various exceptions." Apparently as a result of this review of the record which included the Government's accounting reports, counsel decided to file the final set of exceptions. Petitioner however makes no allegation that the record changed between 1974 and 1982 or that discovery of or investigation into bases for its 1982 water claims was impossible during that period.

Thus, because it appears clear that the 1982 exceptions, whether alleged to have been made based on independent research, were formulated from information which had been in the record and thus in the possession of petitioner's counsel since 1974 or before, we must necessarily conclude that these exceptions could have been filed earlier. Indeed, the *facts* upon which Exceptions 15 and 16 were based (that the Government allegedly failed to establish and protect the water resources on the reservation) were well known to the tribe at the time it filed its original petition in 1951. Thus, the Bands' failure to have made these claims earlier falls under the "possibility of earlier curing" apparent exception to Rule 15(a)'s liberal amendment policy. *See United States v. Truckee–Carson Irrigation District,* 107 F.R.D. 377 (D.C.Nev.1985) (Indian tribe could not amend its complaint to seek a court order to remove a canal from the reservation because the tribe knew of the facts forming the basis of the claims at the time of the original complaint and the tribe unduly delayed in bringing these claims).

## UNDUE DELAY

Notwithstanding the view that Fed. R.Civ.P. 15(a) is to be construed liberally, courts have not hesitated to deny motions to amend that have been filed after significant delay. Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings. In some cases it has been held important in determining the propriety of the motion for leave to amend whether prejudice would result to the nonmoving party. *Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661, 666, 673 (Fed.Cir.1986) (citations omitted) (Bennett, J., dissenting). According to Wright and Miller, "[T]he risk of substantial prejudice increases with the passage of time." 6 Wright & Miller, Federal Practice and Procedure § 1488 at 439 (1971). The Fifth Circuit stated in *Chitimacha,* "[m]ere passage of time need not result in a denial of leave to amend, but delay becomes fatal at some period of time" (citing *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981)) (in light of significant delay—27 months from filing of original complaint—and the fact that the tribe failed to cure deficiencies in earlier amendments, denial of the tribe's motion to amend was not an abuse of discretion); *see Woodson v. Fulton,* 614 F.2d 940, 943 (4th Cir.1980) (leave to amend "may be denied for undue delay").

The Fifth Circuit in *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir.1981), found that the district court did not abuse its discretion when it denied the motion to amend based on an unexplained 19–month delay between the filing of the original complaint and the motion to amend. The court stated, "[a]t some point

in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive. *Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time."* *Id.* at 1025 (emphasis added).

Thus, with the passage of time and acceptance of multiple earlier amendments, a point is reached when the party seeking to amend must justify that request by more than invocation of the concept of the rule's liberality. This added burden to the party seeking amendment under Rule 15(a) is consistent with circuit court precedent. In *Vargas v. McNamara*, 608 F.2d 15 (1st Cir.1979), the First Circuit found that when, after a significant delay, a party seeks to amend its complaint, the court will place the burden on that party to show a valid reason for the neglect and delay. Other courts have similar rules. *See Hayes v. New England Millwork Distrib., Inc.*, 602 F.2d 15, 20 (1st Cir.1979); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C.Cir.1977), *cert. denied* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978); *Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir.1976); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967).

In this case, the 8–year delay in amendment of accounting Exceptions 15 and 16 leaves the Te–Moak Bands with the burden to show the reasonableness of the neglect and delay. While the Bands argue that they were not in possession of vital information pertaining to the water exceptions until right before they were filed, as stated above, the Bands admit that the 8–year delay itself was the result of the breakdown in the relationship between the Bands and their counsel. Contract relations between the Western Shoshone and their counsel were "suspended" and the accounting case was "almost [ ] shut-down" from 1974 to 1982. While such an erosion of trust and confidence between counsel and client is unfortunate, it does not rise to the level of a justification for the 8–year delay. Nor can the Government be expected to bear the brunt of such a significant delay in the case which stemmed from dissension

between a group of dissatisfied Western Shoshone and their counsel.

In the scheme of a case which has stretched over 40 years, an 8–year delay by the Bands may not seem overly significant. However, this was more than a simple delay caused by ongoing proceedings between the parties. In *Carter v. Supermarkets General Corp.*, 684 F.2d 187 (1st Cir.1982), the court upheld the district court's denial of Carter's motion to amend her complaint after a 6–year delay. The court found it significant that "Carter's delay was almost entirely her own doing," *id.* at 192, contrasting this case with one in which the court had caused much of the delay. *See Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir.1970). We find it equally significant here that the Bands and their counsel admittedly were responsible for the 8–year delay in the advancement of this case. Because only one party was involved in and responsible for the delay experienced between 1974 and 1982, and because the Government could do nothing but sit back and wait to see if the accounting case was going to be completely shut down, the Government experienced undue delay under Rule 15(a) by the Te–Moak's failure to conclude the case in a timely manner.

### CONCLUSION

Taken together, the delay, and the ability to have made these claims earlier evidence that the Te–Moak Bands' water claims (Exceptions 15 & 16) should not have been allowed to have been filed in 1982. Because of the delay and the failure to cure within a reasonable time, Exceptions 15 & 16 are barred for failure to meet the standard of Rule 15(a) as elucidated by the Supreme Court in *Foman v. Davis.* The Claims Court abused its discretion by allowing the 1982 Exceptions to be filed. However, despite this abuse, the Claims Court did dismiss the water claims on other grounds. The Claims Court reached the right result. We affirm its judgment on the alternate ground of the Indians' violation of Fed.R.Civ.P. 15(a) as it has been

interpreted by the Supreme Court in *Foman v. Davis.*

AFFIRMED.