ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Public Warehousing Company K.S.C. ) ASBCA No. 57510
)
Under Contract No. SPO300-03-D-3061 )

APPEARANCES FOR THE APPELLANT: Michael R. Charness, Esq.
Adrianne Goins, Esq.
Elizabeth Krabill McIntyre, Esq.
Ryan D. Stalnaker, Esq.
Bryan T. Bunting, Esq.
  Vinson & Elkins, L.L.P.
  Washington, DC

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
John F. Basiak, Jr., Esq.
Keith J. Feigenbaum, Esq.
Kari L. Scheck, Esq.
  Trial Attorneys
  DLA Troop Support
  Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON THE GOVERNMENT'S MOTION FOR LEAVE TO AMEND ANSWER AND MOTION TO DISMISS WITHOUT PREJUDICE, OR IN THE ALTERNATIVE, TO STAY

This appeal is before the Board on the government's motion to amend its answer and motion to dismiss without prejudice, or in the alternative, to stay. Appellant, Public Warehousing Company K.S.C. (PWC), opposes the motions. We grant the motion to amend, deny the motion to dismiss, and grant the alternative motion to stay, for one year.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. From 2003 through 2010, PWC contracted with the Defense Logistics Agency (DLA) to distribute food and other products to military customers in Iraq, Kuwait, and elsewhere in the Middle East as part of the Prime Vendor Program. PWC performed this work pursuant to three contracts: SPO300-03-D-3061 (PV-1); SPM300-05-D-3119 (PV Bridge); and SPM300-05-D-3128 (PV-2). This appeal

concerns only the earliest period of performance of PV-1 between 2003 and 2004 under Modification 2. (App. opp'n at 5)

2. These contracts have produced a great deal of litigation between the parties. This is at least the eighth panel decision involving just the PV-1 contract.* In this opinion, we will describe only those facts necessary for the pending motions.

3. The contract provided for charges based on a minimum three-day round trip by PWC's trucks, with per day charges for trips over the three-day minimum. In late 2004, PWC "discovered" that it had not billed the government for 779 truck trips that had departed between October 2003 and September 2004. (App. opp'n at 8)

4. The parties made some attempt to resolve the charges but on 21 September 2009, appellant submitted a certified claim to the contracting officer. PWC re-submitted the claim on 16 November 2010 because the person who had certified the claim lacked authority. (App. opp'n at 9; R4, tab 18)

5. In November 2009, a grand jury in the Northern District of Georgia issued an indictment against PWC for various fraud offenses arising from the contract at issue. That case is still pending.

6. The contracting officer did not issue a final decision (app. opp'n at 9). On 27 January 2011, PWC filed this appeal. After PWC filed its complaint on 3 March 2011, the government filed an answer on 21 April 2011 and a supplemental answer on 31 October 2011.

7. In the pending motions, DLA seeks leave to amend to assert affirmative defenses of first material breach and laches. PWC does not dispute that the government's proposed first material breach defenses are based on allegations in the indictment. For example, both the indictment and one of the proposed affirmative defenses allege that PWC overcharged the government by failing to purchase food from a vendor with a lower price because that vendor did not provide PWC a prompt payment discount, and that PWC misrepresented to the government that the requested vendor's

---

\* *PWC*, ASBCA No. 56022, 15-1 BCA ¶ 36,062
*PWC*, ASBCA No. 57510, 13 BCA ¶ 35,314
*PWC*, ASBCA No. 56022, 13 BCA ¶ 35,201
*PWC*, ASBCA No. 56022, 11-2 BCA ¶ 34,788
*PWC*, ASBCA No. 56116, 09-2 BCA ¶ 34,264
*PWC*, ASBCA No. 56116, 09-1 BCA ¶ 34,038
*PWC*, ASBCA No. 56116, 08-1 BCA ¶ 33,787

price was higher than the vendor PWC used. (*Compare* gov't mot., ex. 4 at 31-32, *and* ex. 6 at 24-25)

8. In its proposed laches defense, the government contends that PWC unreasonably delayed submitting its claim and asserts that, to the extent that DLA suffered prejudice as a result of delay, the claim is barred by laches (gov't mot., ex. 4 at 36).

## DECISION

### I. Motion to Amend

Under Board Rule 6(d), we "may permit either party to amend its pleading upon conditions fair to both parties." In exercising our discretion under this rule, the Board has looked to Rule 15 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 15(a)(2) provides that "[t]he court should freely grant leave when justice so requires."

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court held that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Recently, in *Public Warehousing Company K.S.C.*, ASBCA No. 58088, 16-1 BCA ¶ 36,555 (an appeal on the PV-2 contract), we granted the government leave to amend its answer to assert affirmative defenses, including first material breach defenses similar to those DLA seeks to add to this appeal. We rule once again that, although the government could have acted more quickly to seek leave to amend, on balance the equities favor granting the government's motion with respect to first material breach, which is the focus of the government's motion. On the other hand, the government does not explain why we should grant leave to add a laches defense, nor does it explain why it waited so long to seek leave to add this defense. We deny the motion with respect to that defense. The balance of this opinion relates only to the first material breach defenses.

In its opposition to DLA's motion, PWC's primary contention involves the length of time that both its claim and the appeal have been pending. Based on PWC's representation that the claim involves truck trips that departed between October 2003 and September 2004 (SOF ¶ 3), we agree that the underlying events occurred quite a long time ago and that there are significant concerns about fading memories and stale

3

evidence. Moreover, this appeal has been pending since January 2011 and is now more than six years old.

However, PWC must accept responsibility for much of the passage of time. PWC controlled when it submitted its claim to the contracting officer and chose to wait until nearly six years after the underlying events began to submit that claim, and more than seven years until it submitted a claim certified by an authorized official (SOF ¶ 4).

With respect to the time that this appeal has been pending, in our November 2016 decision involving ASBCA No. 58088, we observed that close examination of the docket indicated that there had been little activity and that both parties prioritized other appeals involving the prime vendor contracts. *PWC*, 16-1 BCA ¶ 36,555 at 178,042. PWC contends that this does not hold true for this appeal. We agree in part because there has been more activity in this appeal than there had been in ASBCA No. 58088. But PWC introduces this argument in its brief by stating that "PWC took [another appeal, ASBCA No. 56022] to trial...and immediately after that trial proceeded to press forward in this Appeal" (app. opp'n at 1).

We will accept this representation as true for purposes of this motion, but the hearing in ASBCA No. 56022 took place in July 2014. By PWC's own admission it only "proceeded to press forward" in this appeal when it had been pending for 3.5 years. This is confirmed by examination of our docket. During the early stages of this appeal, the parties filed a number of joint status reports in which they informed the Board that they had chosen to prioritize other appeals. For example, in a 15 June 2012 joint status report submitted by PWC, the parties informed the Board that they "have been focusing their activities on PWC's other appeals, which have entailed continuing discovery in ASBCA No. 56022, litigating the government's motion to dismiss in ASBCA No. 58078, and preparing the pleadings and appeal file in ASBCA No. 58088." They further stated that, 18 months after filing, they still needed to confer on a schedule. Thus, PWC can hardly place all of the blame on DLA for the length of time that this appeal has been pending. The bottom line from our perspective is that for the period from October 2003 to July 2014, PWC must accept its share of the responsibility for the lapse of time.

We conclude, as we did in our November 2016 decision in ASBCA No. 58088, that the government would have been wiser to seek leave to amend its answer earlier, after the Board's 23 September 2014 decision in *Laguna Construction Co.*, ASBCA No. 58324, 14-1 BCA ¶ 35,748. In that appeal, we granted the government summary judgment based on a first material breach defense after the contractor's officials pled guilty in a district court to taking kickbacks. But we also recognize that the government knew that Laguna had appealed that decision to the Federal Circuit. Until the court of appeals issued its opinion in *Laguna Construction Co. v. Carter*, 828 F.3d 1364

4

(Fed. Cir. 2016), the government did not know that the first material breach defense would remain viable. Moreover, *Laguna* arose from guilty pleas by the contractor's officials. By contrast, PWC's district court criminal case remains pending (SOF ¶ 6). Accordingly, as we did in our November 2016 opinion in ASBCA No. 58088, we find that the government's delay in seeking leave to amend its answer is at least partially excused by the uncertainty in the law of first material breach and the unresolved district court criminal case.

We also recognize that the government waited more than five months after the Federal Circuit's decision in *Laguna* before filing the pending motions. Under ordinary circumstances, this would have been a significant consideration in favor of denying leave to amend. But the totality of litigation on the prime vendor contracts, leads us to a different conclusion. Specifically, in ASBCA No. 59020 (which involves all three prime vendor contracts) DLA filed an amended answer as of right that raised the first material breach defense on 22 July 2016, one week after the Federal Circuit's decision in *Laguna*. DLA then filed a motion to dismiss or stay that appeal due to the criminal case on 17 August 2016. Similarly, in ASBCA No. 58088 the government filed a motion to amend its answer to add affirmative defenses on 31 August 2016 and a similar motion to dismiss on 30 September 2016. With this many related motions pending that required panel decisions, it was reasonable for the government to wait until the Board had resolved the motions in one of the other appeals before it filed the pending motions.

PWC cites several Federal Circuit cases in which the court of appeals affirmed a lower court's denial of a motion seeking leave to amend. In the process, it mischaracterizes our November 2016 opinion in ASBCA No. 58088 as ignoring Federal Circuit and Supreme Court precedent that provide for denial of leave to amend based on delay alone. Despite PWC's contentions, we analyzed the delays in ASBCA No. 58088 and, as in the present appeal, we found that the government could have moved to amend more quickly but we also considered the pendency of the *Laguna* appeal to the Federal Circuit, the pending district court criminal case, and a largely inactive docket that indicated that both parties had focused on other appeals. *PWC*, 16-1 BCA ¶ 36,555 at 178,042-43.

The Federal Circuit cases that PWC relies on in support of its contention that delay alone is enough to deny the motion to amend involved extreme delays that were entirely the responsibility of the party seeking leave to amend, which we have found not to be the case here. PWC relies most heavily on *Te-Moak Bands of Western Shoshone Indians of Nevada v. United States*, 948 F.2d 1258 (Fed. Cir. 1991) in which the plaintiffs sought leave to file additional accounting exceptions after an eight-year delay caused by a breakdown in the relationship between the plaintiffs and their attorneys, and which were based on information that the plaintiffs possessed before the delay. The Federal Circuit found this delay to be entirely the fault of the plaintiffs and

held that the non-moving party had suffered an undue delay. *Id.* at 1262-63. Similarly, PWC's reliance on *Cencast Services, L.P. v. United States*, 729 F.3d 1352 (Fed. Cir. 2013) is misplaced because the court of appeals found that the plaintiff made a late attempt to introduce a new legal theory that it had known about for 15 years but had failed to raise, including during a five-year period in which it could have sought leave to amend its pleadings. *Id.* at 1364.

PWC also contends that it will be prejudiced if we grant leave to DLA to introduce new issues into the appeal so many years after the filing. PWC contends that discovery is far along (although DLA disputes this) and that it will have to invest significant additional resources to conduct new discovery if we allow the amendment. These concerns are not unfounded but in our view must be considered along with several other factors.

In weighing a motion to amend, a tribunal must consider the hardship to the moving party if leave to amend is denied, the reason the moving party failed to include the material in the original pleading, and the injustice resulting to the party opposing the motion should it be granted. *Childers v. Mineta*, 205 F.R.D. 29, 32 (D.D.C. 2001) (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.)). With respect to the first of these considerations, the government will be prejudiced if leave to amend is denied because this is the only opportunity it will have to defend PWC's contract claims. As for the second, we have already determined that the government had at least some basis for waiting to file the proposed amendment.

Third, PWC's concerns about the prejudice caused by a need to conduct additional discovery are speculative in light of our decision to stay this case for one year, as discussed in part II below. By that point, the criminal case may be at or near resolution. If that case is dismissed or PWC is found not guilty, the government's first material breach defense may not be viable and may not need to be addressed. *See Laguna*, 828 F.3d at 1368-69. On the other hand, if the district court case results in a guilty plea or a guilty verdict, that may be ground for summary disposition of this case. *Id.* Accordingly, there is a substantial chance that allowing the amendment at this stage either will not make this appeal more complicated or may actually simplify it.

DLA's motion for leave to amend its answer to assert first material breach defenses is granted. Its motion with respect to laches is denied. We accept the proposed answer as filed, except the laches defense is stricken.

6

## II. Motion to Dismiss or Stay

We recently denied two DLA motions to dismiss PWC appeals due to the criminal case but granted its alternative motion to stay (for one year). *PWC*, ASBCA No. 58088, 17-1 BCA ¶ 36,589; *PWC*, ASBCA No. 59020, 17-1 BCA ¶ 36,630. As in those appeals, DLA has submitted a letter from the United States Attorney for the Northern District of Georgia, John A. Horn, requesting that DLA seek dismissal or stay of this appeal (mot., ex. 10). Our recent *PWC* decisions identify the applicable precedent and explain our attempts to balance the interests of the government in the criminal case and PWC in proceeding with these appeals. We do not believe that it is necessary to go through that analysis again at length. As in those two appeals, we conclude that it is not appropriate to dismiss this appeal but we will stay it for one year to allow the criminal case to proceed.

In our 8 December 2016 decision in ASBCA No. 58088, we identified four opinions from the Federal Circuit and its predecessor court, the Court of Claims, that demonstrate that our reviewing court generally has been amenable to requests for a stay when there is a parallel criminal matter. *Peden v. United States*, 512 F.2d 1099 (Ct. Cl. 1975); *Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978); *Luigi Goldstein, Inc. v. United States*, 217 Ct. Cl. 733 (1978); and *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987). Other than a passing reference to *Afro-Lecon*, PWC fails to cite these cases and thus does not contend that we misunderstood or misapplied them in some way.

Instead, PWC spends a considerable amount of space discussing Board appeals where we declined to dismiss or stay an appeal (app. opp'n at 34-37). *BAE Sys. Tactical Vehicle Sys. LP*, ASBCA No. 59491, 16-1 BCA ¶ 36,450; *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 57530, 58161, 16-1 BCA ¶ 36,449; *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 56358, 57151, 11-1 BCA ¶ 34,614; *Suh'dutsing Technologies, LLC*, ASBCA No. 58760, 15-1 BCA ¶ 36,058; *TRW, Inc.*, ASBCA Nos. 51172, 51530, 99-2 BCA ¶ 30,407. But none of these appeals involved a parallel criminal case. Accordingly, we believe that the precedential decisions from the Federal Circuit and the Court of Claims are the controlling cases. And, as we observed in our December 2016 opinion, those cases demonstrate that "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way." *PWC*, 17-1 BCA ¶ 36,589 (citing *Peden*, 512 F.2d at 1103).

PWC also requests that, if we determine that a stay is in order, we allow PWC to move forward with discovery, dispositive motions, and a hearing on its affirmative claims, staying only the government's first material breach defenses (app. opp'n at 37). We do not believe that this is the appropriate way to proceed. We are not as optimistic as PWC that the discovery issues can be so easily separated. As the Federal Circuit

explained in *Afro-Lecon*, "[t]he broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in the criminal case." *Afro-Lecon*, 820 F.2d at 1203. And, as we have observed, PWC has a history of attempting to take advantage of civil discovery to aid its position in the criminal case. *PWC*, 17-1 BCA ¶ 36,589 at 178,208. Moreover, we believe that conducting a hearing where we cannot consider the government's affirmative defenses would be an inefficient use of our resources.

We deny DLA's motion to dismiss but grant its motion to stay for one year. The appeal is stayed for one year from the date of this opinion.

Dated: 21 March 2017

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57510, Appeal of Public Warehousing Company K.S.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8