DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Kellogg Brown & Root Services, Inc. | ) | ASBCA Nos. 62681, 62843, 62844 |
| | ) | |
| Under Contract No. W912GB-13-C-0011 | ) | |

APPEARANCES FOR THE APPELLANT: Daniel J. Kraftson, Esq.
Sean M. Howley, Esq.
Jonathan J. Straw, Esq.
 Kraftson Caudle PLC
 McLean, VA

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
 Engineer Chief Trial Attorney
Paul L. Huhtanen, Esq.
Herbert J. Aldridge, Esq.
Paul Cheverie, Esq.
LuzDanielle O. Bolong, Esq.
 Engineer Trial Attorneys
 U.S. Army Engineer District, Europe

OPINION BY ADMINISTRATIVE JUDGE HERZFELD
ON THE GOVERNMENT'S MOTION TO AMEND ITS ANSWER

The United States Army Corps of Engineers (Corps of Engineers) moves to amend its answer to add an affirmative defense that Kellogg Brown & Root Services, Inc. (KBR) made material misrepresentations in its proposal, rendering the fully-performed contract void *ab initio*.  For the reasons discussed below, we grant the Corps of Engineers' motion to amend its answer to add the material misrepresentation affirmative defense.  The Board will consider this legal defense on the merits.

BACKGROUND

On July 9, 2013, the Corps of Engineers and KBR executed Contract No. W912GB-13-C-0011 for a firm, fixed-price amount of $134,211,592 to construct an Aegis Ashore Missile Defense System site on Deveselu Air Base in Deveselu, Romania (R4, tab 3 at 1-2); *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 62681 *et al.*, 22-1 BCA ¶ 37,974 at 184,424.  Later in July, two unsuccessful offerors protested the award to the U.S. Government Accountability Office (GAO), asserting that the Corps of Engineers conducted an improper price realism analysis, which should have found KBR's price unrealistically low, and that the agency should have

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

given the protesters higher technical ratings and KBR lower technical ratings. *AMEC Programs, Inc.*, B-408708 *et seq.*, Dec. 4, 2013, 2014 CPD ¶ 50 at 7-9. On December 4, 2013, GAO denied the protests, concluding that (1) the Corps of Engineers' price realism analysis was reasonable and (2) because neither protester argued that "their own proposal should have been found technically superior to KBR's" and the price disparity in the proposals, neither protester could show a "reasonable possibility of prejudice" even if GAO accepted the "protesters' technical evaluation challenges." *Id.* at 9-10.

KBR substantially completed the project on December 19, 2015, on an expedited schedule to meet a presidential mandate to have the system operational "in the 2015 timeframe" (R4, tab 38; consolidated & amended compl. ¶ 73; gov't answer to appellant's consolidated & amended compl. ¶ 73); *Kellogg Brown*, 22-1 BCA ¶ 37,974 at 184,424.

Thereafter, KBR submitted a certified claim, which the Corps of Engineers denied, and KBR filed its first timely notice of appeal to this Board on September 24, 2020. *Kellogg Brown*, 21-1 BCA ¶ 37,974 at 184,425-27. Subsequently, the Corps of Engineers issued two demand letters seeking liquidated damages, which KBR timely appealed to this Board on March 8, 2021. *Id.* at 184,427-29. The Corps of Engineers moved to dismiss the appeals as untimely, which we denied on November 22, 2021. *Id.* A month later, the Corps of Engineers filed another motion to dismiss, asserting that the appeals should be dismissed because KBR's certified claim did not include a sum certain in its claim. We have not ruled on that motion yet.[1]

On July 14, 2023, the Corps of Engineers moved to amend its answer to allege an affirmative defense that KBR's material misrepresentations in its proposal induced the Corps of Engineers to enter the contract with KBR, which should result in voiding the contract. Fact discovery had ended on June 23, 2023. Notwithstanding the Corps of Engineers' delay in formally amending its answer, KBR was aware of the potential affirmative defense before the conclusion of fact discovery (as reflected in its deposition of the contracting officer on these issues).

The Corps of Engineers' proposed affirmative defense alleges KBR made eight material misrepresentations in its proposal, which the agency relied on in awarding the contract and defending the GAO protest. The Corps of Engineers asserts that those material misrepresentations render the contract void *ab initio* (gov't mot. at 1-3).

---

[1] We intend to seek supplemental briefing from the parties in light of the U.S. Court of Appeals for the Federal Circuit's decision in *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364 (Fed. Cir. 2023).

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

First, the Corps of Engineers alleges KBR misrepresented that it had "obtained 'firm subcontract and vendor quotes for over 97 percent of the tasks and materials' in the project and only $3,637,386 or 2.93 percent of KBR's proposal was estimated" (gov't mot. at 1). In February 2014, after performance began, the Corps of Engineers realized that KBR did not have all their subcontractors "bought out" and that the "97 percent firm quotes and 2.93 percent" figure in KBR's proposal had not been accurate (app. resp., ex. 1 – Deposition Transcript of Contracting Officer Rachael Raposa (CO tr.) at 15)). The Corps of Engineers did not attempt to void the contract at that point, "[b]ecause we wanted KBR to just get back on track" with an interest in "KBR performing the work" (CO tr. at 17-18).

Second, the Corps of Engineers alleges KBR misrepresented that "it had 'firm fixed prices' and 'acceptance of subcontract terms and conditions from all major subcontractors'" (gov't mot. at 1). Like the first alleged misrepresentation, the contracting officer stated she knew in February 2014 that "KBR had not bought out all its subs" (CO tr. at 21).

Third, the Corps of Engineers alleges KBR misrepresented the "scope and value of the work subcontracted to its 'key subcontractor' US International Development Consortium, Inc" (USIDC) (gov't mot. at 1). The contracting officer acknowledged she knew in late 2013 that KBR intended to use a different subcontractor, Schneider Electric Buildings Critical Systems, Inc., instead of USIDC to do this security systems work (CO tr. at 109). For example, in the second partnering conference between the Corps of Engineers and KBR in 2014, the contracting officer noted that KBR's performance seemed like a "bait and switch" (CO tr. at 115-16). Nevertheless, at that time, the Corps of Engineers wanted KBR to perform and did not consider defaulting KBR or seek to void the contract (CO tr. at 109, 117).

Fourth, the Corps of Engineers alleges KBR misrepresented that it "would self-perform 25 percent of the total amount of work by value under the Contract, as required by the Solicitation clause 52.236-1 'Performance of Work by the Contractor'" (gov't mot. at 1-2). "[S]hortly after award when we couldn't get anybody to the site" (and no later than September 2014), the contracting officer suspected that KBR might not comply with the requirement to perform 25% of the work (CO tr. at 137-38, 153, 159). However, the contracting officer hoped that KBR "would come forward" with more staff during the project because the Corps of Engineers was "driving towards performance" and "looking at the finish line" of the project (CO tr. at 155-56).

Fifth, the Corps of Engineers alleges KBR misrepresented that it "already submitted its Technical Assistance Agreement [TAA] to the Directorate of Defense Trade Controls (DDTC) before its May 28, 2013 revised proposal" (gov't mot. at 2). In November 2013, the contracting officer doubted that representation, questioning

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

why KBR had not completed this task given that KBR's "revised technical proposal stated you had already started this process" (R4, tab 221 at 2510390).[2]

Sixth, the Corps of Engineers alleges KBR misrepresented that the "'relevant' rate for calculating average Romanian labor costs was $5.25/hour for construction" (gov't mot. at 2). In 2017, when KBR was negotiating for an equitable adjustment, the Corps of Engineers learned that the "hourly wage rate of $5.25 was not a proposed rate" and that KBR had used rates varying from $18 to $23 for paying Romanian workers (app. supp. R4, tab 1-312 at 16946-47).

Seventh, the Corps of Engineers alleges KBR misrepresented that its "Quality Control Manager specifically identified by name and qualifications in its proposal would be available to perform this role on the Project" (gov't mot. at 2). The Corps of Engineers approved a replacement soon after the request in 2013 (weeks after award) and did not seek to void or default the contract (CO tr. at 229-30, 233).

Eighth, the Corps of Engineers alleges KBR misrepresented that "its revised Subcontracting Plan was based on actual 'bids received' from the various socioeconomic types of U.S. small businesses as stated in KBR's discussion letter response" (gov't mot. at 2). During performance in February 2014, KBR informed the Corps of Engineers that KBR's proposed small business subcontractors had "since refused to submit pricing or sign contracts to perform work" on the contract, and it would not meet the goals in its subcontractor plan (R4, tab 250). For the September 2014 Contractor Performance Assessment Report, the Corps of Engineers gave KBR an "Unsatisfactory" past performance rating for utilization of small businesses based on KBR's "complete disregard to comply" with the small business subcontracting plan (R4, tab 83 at 3, 6). The contract also included a provision permitting the Corps of Engineers to impose liquidated damages for failure to make a good faith effort to meet the requirements of a small business plan (R4, tab 4 at 30, 35, 56 (incorporating by reference FAR 52.219-16(b) – LIQUIDATED DAMAGES-SUBCONTRACTING PLAN (JAN 1999)). At that time, the contracting officer knew that KBR had failed to meet the targets in its subcontracting plan but did not impose

---

[2] Out of an abundance of caution we have marked this decision as protected based on citation to R4, tab 221, which is the only document cited in this decision that bears a protective legend. However, both parties directly or indirectly cited this protected document but neither marked the information as protected. Like the parties, we do not believe the discussion of this document includes anything meeting the criteria of protected information in the Protective Order. However, on or before December 22, 2023, the parties shall (1) indicate whether the Board may re-issue this decision without the protective legend or (2) provide a legal basis supporting any redactions.

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

liquidated damages or threaten to default KBR for failing to meet this requirement (CO tr. at 312-13).

Ultimately, the Corps of Engineers knew of seven of the eight alleged material misrepresentations in 2013 and 2014 while performance was ongoing and knew of the other alleged material misrepresentation by 2017.

After filing its motion to amend, the Corps of Engineers (1) moved for summary judgment on the newly alleged affirmative defense, and (2) moved to stay this appeal (including the hearing then scheduled to begin November 1, 2023) until the parties briefed and the Board ruled on the motion for summary judgment. On August 2, 2023, KBR requested that we deny the motion to stay and defer briefing on the summary judgment motion, given that the hearing was so close. After a status conference call, we denied the Corps of Engineers' motion to stay the hearing, deferred ruling on the summary judgment motion, and awaited completion of the parties' briefing of the motion to amend. *See Alistiqama Co.*, ASBCA Nos. 62501, 62502, 20-1 BCA ¶ 37,720 at 183,100 at n.1 (deferring "consideration of the motion for summary judgment to the merits briefing" and issuing order before responding party files brief). The parties completed briefing of the motion to amend on September 20, 2023. On October 11, 2023, KBR requested that we postpone the hearing until after the Board ruled on the Corps of Engineers' motion to amend. On October 16, 2023, we granted that request by cancelling the scheduled hearing. We now turn to ruling on the motion to amend.

## DECISION

KBR opposes the Corps of Engineers' motion to amend its answer, asserting that the Corps of Engineers delayed and otherwise acted prejudicially in raising its material misrepresentation affirmative defense (app. resp. at 9-38). KBR also asserts that any amendment is futile because (1) the Board lacks jurisdiction due to the agency's failure to raise the affirmative defense in a contracting officer's decision, (2) the Board has no authority to make findings of fact regarding material misrepresentations, and (3) the Corps of Engineers waived this defense by permitting KBR to complete its performance rather than voiding the contract when it knew of these alleged misrepresentations during performance (app. resp. at 9-54).

*I. Standard of Review*

"The Board may permit either party to amend its pleading upon conditions fair to both parties" and "[w]hen issues within the proper scope of the appeal, but not raised by the pleadings, are tried . . . by permission of the Board, they shall be treated in all respects as if they had been raised" in the pleadings. ASBCA Rule 6(d). The Board "looks to Fed. R. Civ. P. 15(a)(2), with its liberal standard for amendment, for

5

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

guidance." *Chugach Fed. Sols., Inc.*, ASBCA No. 61320, 18-1 BCA ¶ 37,111 at 180,620. This liberal standard affords a litigant the ability to test a claim or defense "on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *ABB Enter. Software, Inc.*, ASBCA No. 60314, 17-1 BCA ¶ 36,586 at 178,202. Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," we "freely" permit amendment of pleadings. *Foman*, 371 U.S. at 182; *Shell Oil Co. v. United States*, 896 F.3d 1299, 1315 (Fed. Cir. 2018); *Pub. Warehousing Co. K.S.C.*, ASBCA No. 57510, 17-1 BCA ¶ 36,700 at 178,720.

*II. Neither Undue Delay Nor Prejudice Justify Denying the Motion to Amend*

KBR contends that the Corps of Engineers unduly delayed raising this affirmative defense, pointing out that the contracting officer admitted knowledge of almost all the alleged material misrepresentations nine or ten years before seeking leave to amend its answer (app. resp. at 16-17). Pointing to one of our decisions, the Corps of Engineers asserts that "regardless of the length of delay that factor alone is insufficient reason to prohibit amendment" of an answer. *Space Age Eng'g, Inc.*, ASBCA No. 25761 *et al.*, 83-2 BCA ¶ 16,789 at 83,441 (relying on precedent from circuits other than the Federal Circuit or Court of Claims); (gov't mot. at 5-6). But, as KBR points out, the Federal Circuit subsequently stated that "[d]elay alone, even without a demonstration of prejudice, has . . . been sufficient grounds to deny amendment of pleadings." *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260-61 (Fed. Cir. 1991) (*Te-Moak Indians*); (app. resp. at 31). We have clarified that "delay alone is enough to deny the motion to amend" where it involves "extreme delays that were entirely the responsibility of the party seeking leave to amend . . . ." *Pub. Warehousing*, 17-1 BCA ¶ 36,700 at 178,722.

Extreme delays (standing alone) usually must encompass both (1) significant delay in raising a defense after a party knows the underlying facts of a defense and (2) significant delay in raising the defense during the litigation (for example, raising it after the trial has begun, the case has already been appealed, or after court-imposed deadlines to amend pleadings). *Shell Oil*, 896 F.3d at 1316 (finding undue delay in raising affirmative defense on a 50-year old World War II-era contract, where the government was aware of its defense for 20-25 years and raised the defense 10 years into the litigation only after two trips to the Federal Circuit); *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1356-57, 1363-64 (Fed. Cir. 2013) (finding undue delay in amending pleading, where party knew of the claim 15 years prior to raising the new theory, seven years after filing suit, and three years after the Court-imposed deadline for amending pleadings); *Te-Moak Indians*, 948 F.2d at 1262-63 (finding undue delay in a 40-year case and eight-year delay in amending pleadings).

6

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

As to the first component, KBR has demonstrated that the Corps of Engineers significantly delayed raising this defense since obtaining the underlying knowledge of the facts nearly ten years ago.  However, as to the second component, the Corps of Engineers did not unduly delay raising this defense in this litigation, having formally moved to amend before the hearing and apprising KBR of the likely defense during fact discovery.  Thus, the Corps of Engineers' delay does not rise to the "extreme delay" necessary to deny its motion to amend the pleadings.

KBR also asserts that the Corps of Engineers' delay in raising this defense during this appeal has prejudiced KBR and was done in bad faith (app. resp. at 36-38).  Government officials are presumed to act in good faith and KBR has not established by clear and convincing evidence that the Corps of Engineers acted in bad faith.  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40, 1243 (Fed. Cir. 2002).  Indeed, KBR acknowledges that it has deposed the contracting officer and obtained some discovery regarding the material misrepresentations asserted as the basis for the Corps of Engineers' affirmative defense (and its brief opposing amendment attaches and cites that deposition frequently to respond to some of the alleged material misrepresentations).  Moreover, the Corps of Engineers has laid out the evidence it intends to rely upon in its now-deferred motion for summary judgment.  However, given the timing of the Corps of Engineers' motion to amend and to avoid any prejudice, we will include additional time for KBR to conduct fact discovery to prepare for the hearing (particularly given KBR's request to delay the hearing).  *Raytheon Co.*, ASBCA Nos. 60448, 60785, 18-1 BCA ¶ 37,029 at 180,301.

## III.  *The Proposed Amendment to the Answer is Not Futile*

The Corps of Engineers asserts that KBR's futility argument is "irrelevant" and we need not consider it (gov't reply at 8-9).  We disagree – the argument is relevant and must be assessed.  "Our cases have found futility of amendment and denied leave to amend where the litigant cannot prove any set of facts in support of a claim or defense that would entitle it to relief."  *Engility, LLC*, ASBCA No. 61281, 19-1 BCA ¶ 37,430 at 181,922.  To deny the motion, "we would need to assume that the [agency] is essentially asserting a defense with no basis in law."  *Chugach*, 18-1 BCA ¶ 37,111 at 180,620.  Like a motion to dismiss for failure to state a claim upon which relief may be granted, we do not consider facts outside the proposed pleading to judge any futility objection to a motion to amend.  *Id.* (citing FED. R. CIV. P. 12(D)).  Here, the Corps of Engineers' proposed amendment meets these notice pleading requirements.[3]

---

[3] The Federal Circuit has not addressed in a precedential decision whether an affirmative defense needs to meet the plausibility standards applicable to a complaint.  *Chugach*, 18-1 BCA ¶ 37,111 at 180,620 (discussing whether the plausibility standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) applies to affirmative

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

First, KBR asserts that we lack jurisdiction over this appeal because there was no contracting officer's decision on the affirmative defense (app. resp. 39-48). Material misrepresentation (or fraud in the inducement) is a common-law affirmative defense. *Hollymatic Corp.*, ASBCA Nos. 61920, 61956, 21-1 BCA ¶ 37,823 at 183,665 ("The common law defense of fraud in the inducement may be established either by proof of fraud or material misrepresentation. It is well established that when one party to a contract induces the other party to enter into an agreement through fraud or misrepresentation, the cont[r]act is *void ab initio*." (internal citations omitted)), *aff'd*, No. 2021-2158, 2022 WL 1041187 (Fed. Cir. 2022). A common-law affirmative defense, such as material misrepresentation, "is not subject to a contracting officer's final decision because the defense neither seeks the payment of money nor the adjustment of contract terms." *Frazier Invs. d/b/a Optimum Constr.*, ASBCA No. 63001, 23-1 BCA ¶ 38,313 at 186,044; *see also Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1362-63 (Fed. Cir. 2018) ("[I]f a party raises an affirmative defense under the contract as written—for example, common-law defenses of fraud or prior material breach—it need not first be presented to the CO for a final decision, since a defense is not a claim for money, and the CO has no necessary role in assessing the defense."); *Laguna Constr. Co. v. Carter*, 828 F.3d 1364, 1368 (Fed. Cir. 2016) (concluding that affirmative defense of fraud was not a CDA "claim" because "the government's defense plainly does not seek the payment of money or the adjustment or interpretation of contract terms").

KBR asserts that the Corps of Engineers' defense to void the contract constitutes a remedy that requires the adjustment of contract terms and, thus, a contracting officer's decision (app. resp. at 39-48). KBR points to *CanPro Investments*, where the U.S. Court of Federal Claims found no Contract Disputes Act jurisdiction over a contractor's claim for rescission because that remedy was not presented to the contracting officer for a final decision (app. resp. at 43). *CanPro Invs. Ltd. v. United States*, 130 Fed. Cl. 320, 340 (2017). Notably, however, the court found that it had jurisdiction over a claim for a "[m]isrepresentation in the inducement of a contract" that typically permits a party to void a contract or make it voidable. *Id*. at 338. The court's apparent disconnect between claim and remedy may explain what the court meant by "rescission." The court appears to have rejected a claim for an "agreement of rescission," citing that provision of the Restatement. *Id*. at 340 (citing RESTATEMENT (SECOND) OF CONTRACTS § 283). Indeed, that section of the Restatement notes the difference between an "agreement of rescission" (what the *CanPro* court was apparently discussing) and the use of "rescission" to signify avoidance of a contract (as we have here). RESTATEMENT (SECOND) OF CONTRACTS § 283, cmt. a (1981) ("The term 'agreement of rescission' is used in this Restatement

---

defenses). Even assuming that standard applied and looking only at the pleadings, the Corps of Engineers has plausibly pleaded its proposed affirmative defense of material misrepresentation.

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

to avoid confusion with the word 'rescission,' which courts sometimes use to refer to the exercise by one party of a power of avoidance (§ 7).").  And, when a tribunal voids a contract it need not adjust any contract terms (such as reforming a contract), because there is "not a contract at all" and "it is the 'promise' or 'agreement' that is void of legal effect."  RESTATEMENT (SECOND) OF CONTRACTS § 7, cmt. a. (1981).  A voided contract wipes away any contractor or government claims (including liquidated damages).  *ABS Dev. Corp.*, ASBCA No. 60022 *et al.*, 19-1 BCA ¶ 37,234 at 181,233.

Moreover, we have adjudicated an agency's material misrepresentation affirmative defense without a contracting officer's final decision relating to that affirmative defense.  *Dongbuk R&U Eng'g Co.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,636 (appellant appealed "based on lack of receipt of a final CO decision"); *see also ABS Dev. Corp.*, ASBCA Nos. 60022, 60023, 17-1 BCA ¶ 36,842 at 179,522 (permitting agency to amend the answer to raise a void *ab initio* defense where there was no contracting officer's decision), *and ABS Dev. Corp.*, ASBCA No. 60022 *et al.*, 17-1 BCA ¶ 36,784 at 179,301 (refusing to dismiss appeal despite agency's failure to issue contracting officer's final decisions).  Thus, we have jurisdiction to hear the Corps of Engineers' material misrepresentation defense without a contracting officer's final decision.

Second, KBR asserts that we lack the authority to make findings of fact regarding a defense of material misrepresentation because it would require the Board to make determinations of fraud, which is outside our jurisdiction (app. resp. at 48-52).  We disagree.  The Contract Disputes Act "does not authorize an agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud."  41 U.S.C. § 7103(c)(1).  The Federal Circuit has explained, "[c]ertain fraud-related claims are outside of the Board's jurisdiction," including "claims relating to 41 U.S.C. § 7103 (formerly 41 U.S.C. § 604), 28 U.S.C. § 2514 (Special Plea in Fraud), and 31 U.S.C. §§ 3729–31 (False Claims Act)."  *Laguna*, 828 F.3d at 1368.  While we lack jurisdiction to hear the types of fraud claims noted by the Federal Circuit, we possess jurisdiction over a void *ab initio* defense where the agency challenges "whether the contractor can establish . . . a contract with the government in the first place . . . ."  *ABS Dev. Corp.*, 17-1 BCA ¶ 36,842 at 179,522.  Indeed, a material misrepresentation without fraud may still result in contractual avoidance.  RESTATEMENT (SECOND) OF CONTRACTS § 162, cmt. c (1981) ("[A] non-fraudulent misrepresentation will not entitle him to relief unless it is material.").  While the Board may not make factual findings relating to the types of fraud claims for which we lack jurisdiction, "we may make findings as to the material facts relating to material misrepresentation and the contract and how the acquisition regulations, statutes[,] and contract clauses operate given those findings."  *Hollymatic*, 21-1 BCA ¶ 37,823 at 183,665.  Here, the Corps of Engineers asserts material misrepresentations during contract formation, not fraud derived from claims for which we lack jurisdiction.  Thus, the Board possesses

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

jurisdiction to make factual findings regarding the Corps of Engineers' common law material misrepresentation defense.

Finally, KBR asserts that the Corps of Engineers' delay in raising the material misrepresentation defense should result in waiver, demonstrating the futility of raising the affirmative defense (app. resp. at 52-53). Relying on evidence outside of the pleadings, KBR has asserted that the Corps of Engineers accepted the benefits of performance and never cancelled the contract until after performance concluded. *See Aydin Corp.*, ASBCA No. 34054, 89-1 BCA ¶ 21,206 at 106,998 ("When a material misrepresentation of fact is discovered, the non[-]misrepresenting party has the option of allowing the contract to proceed and seek damages, or rescind the contract. The election to rescind, however, must be made with reasonable promptness, under the circumstances, after the misrepresentation is made known. If a party does not rescind in a timely manner, it will lose its right to rescind. One party will not be allowed to permit an unwary party to continue performance and incur large expenses."); *see also Godley v. United States*, 5 F.3d 1473, 1476 (Fed. Cir. 1993) ("In the event it determines that Mr. Godley's contract was voidable, the trial court must also determine whether the Government cancelled the contract within a reasonable time after discovery of the illegality."); *Pac. Architects & Engrs., Inc. v. United States*, 491 F.2d 734, 742-43 (Ct. Cl. 1974) ("The option to avoid a contract for fraud or misrepresentation is lost if after acquiring knowledge thereof the injured party continues with performance. He is deemed to have affirmed or ratified the voidable contract."). "[A] misrepresentation may prevent the formation of a contract or may make a contract voidable." *Long Island Savs. Bank, FSB v. United States*, 503 F.3d 1234, 1245 (Fed. Cir. 2007). "[A] Government contract tainted by fraud or wrongdoing is void *ab initio*. . . . A contract without the taint of fraud or wrongdoing, however, does not fall within this rule." *Godley*, 5 F.3d at 1476 (citing *J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200 (Fed. Cir. 1988); *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 564 (1961)). A party can waive a material misrepresentation defense if the contract is voidable but not if it is void *ab initio*. *Godley*, 5 F.3d at 1475-76; *Supreme FoodService GMBH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387 at 177,396.

The Corps of Engineers alleges that KBR's material misrepresentations render the contract void *ab initio*. At this stage, we must treat the Corps of Engineers' pleadings as true in considering its motion to amend. *Chugach*, 18-1 BCA ¶ 37,111 at 180,620. Because of that deference at this stage, KBR cannot demonstrate futility and the Corps of Engineers' pleadings pass muster. However, it remains to be seen whether the agency can prove the alleged material misrepresentations and, if so, whether that renders the contract void *ab initio* (no waiver) or voidable (which would allow KBR to assert the agency waived this argument by accepting performance).

DOCUMENT FOR PUBLIC RELEASE
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

CONCLUSION

For the foregoing reasons, we grant the Corps of Engineers' motion to amend its answer to add its material misrepresentation affirmative defense.

Dated:  December 13, 2023

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62681, 62843, 62844, Appeals of Kellogg Brown & Root Services, Inc., rendered in conformance with the Board's Charter.

Dated:  December 13, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals